United States Court of Appeals,

Fifth Circuit.

No. 94-50034

Summary Calendar.

TEXAS FARM BUREAU, Plaintiff-Appellee Cross-Appellant,

v.

UNITED STATES of America, Defendant-Appellant Cross-Appellee.

June 1, 1995.

Appeals from the United States District Court for the Western District of Texas.

Before WISDOM, WIENER and PARKER, Circuit Judges.

WISDOM, Circuit Judge:

This case involves the taxability of income generated by the income-producing activities of a tax-exempt agricultural association. The district court found that the income in question was, in part, non-taxable royalties. We hold that the income in question constituted unrelated business taxable income. Accordingly, we reverse the judgment of the district court and render a judgment in favor of the defendant/appellant, the United States.

I

The plaintiff/appellee, the Texas Farm Bureau ("TFB"), a state agricultural organization formed in the 1920's, is, like 49 other state organizations, a member of the American Farm Bureau Federation. Over the years, the name "Texas Farm Bureau" has acquired a good reputation and is respected by those engaged in agriculture. TFB aims to promote a profitable and desirable system

1

of agriculture in Texas, and TFB is exempt from federal income tax under § 501(c)(5) of the Internal Revenue Code ("I.R.C.").[1] TFB's tax-exempt function is to better the conditions of those engaged in agricultural pursuits, to improve the grade of their products, and to develop a higher degree of efficiency in the respective occupations of those engaged in agricultural pursuits.[2]

In 1947, TFB and several other agricultural associations in the South formed two insurance companies: the Southern Farm Bureau Life Insurance Company ("Life") and the Southern Farm Bureau Casualty Insurance Company ("Casualty"). TFB owns a 10 percent interest in Life, and a 20 percent interest in Casualty. In 1957, Life and Casualty entered into agreements with TFB[3] whereby Life and Casualty paid TFB for certain administrative services and for the exclusive right to use the Farm Bureau name and logo in Texas. In a written agreement with Life, TFB agreed to "use its good offices, influence, and prestige in promoting the general welfare" of Life. TFB also agreed to furnish Life with clerical services, office space, and equipment.

In the tax years 1984 through 1987, TFB received payments from Life and Casualty in accordance with the agreements totaling $2,180,958, $3,054,063, $2,360,390, and $2,318,407 respectively. TFB originally included the full amount of those payments in its

---

[1] 26 U.S.C.A. § 501(c)(5) (1995).

[2] 26 C.F.R. § 1.501(c)(5)-1 (1994).

[3] TFB's agreement with Life was in writing, and its agreement with Casualty was oral. The parties agree that the two agreements consist of primarily the same components.

"unrelated business taxable income" under I.R.C. § 511.  Later, TFB filed amended returns for years 1984 to 1987, contending that under the agreements, Life and Casualty's payments were divisible into two parts:  (1) reimbursement to TFB for administrative and clerical expenses, and (2) royalty for the use of TFB's name, and for the goodwill and benefit Life and Casualty enjoyed from that use.   TFB asserted that royalties constituted 32 percent, 48 percent, 36 percent, and 56 percent of the payments Life and Casualty made to TFB in years 1984 to 1987.   In its amended returns, TFB requested a refund, contending that the royalty payments were exempt from taxation under § 512(b)(2).

The Commissioner denied TFB's request for a refund, and TFB brought suit in federal district court.  The United States moved for summary judgment, arguing that the payments were not royalties and were instead compensation for TFB's sponsorship and endorsement of Life and Casualty, as well as for administrative and clerical services TFB provided.  The district court granted in part the government's motion.  The court concluded that TFB's dealings with Life and Casualty were business activities unrelated to its exempt function, but that there was a genuine issue of fact whether the payments received from Land and Casualty were in part royalties.[4]

The case was tried before a jury, and the United States moved for judgment as a matter of law after TFB rested and again at the close of all the evidence.  The district court denied the motions,

---

[4]*Texas Farm Bureau v. United States,* 822 F.Supp. 371 (W.D.Tex.1993).

and the jury returned a verdict in favor of TFB, concluding that the payments TFB received from Life and Casualty were in part royalties. The district court denied the United States' motion for judgment as a matter of law after the verdict and entered judgment in favor of TFB. From the decision of the district court, the United States appeals, and TFB has filed a cross-appeal, challenging the district court's grant of summary judgment in favor of the United States on the ground that TFB's agreements with Life and Casualty were business activities unrelated to its tax exempt purpose.

## II

Under § 511 of the Internal Revenue Code, organizations that have tax-exempt status under I.R.C. § 501 must still pay income tax on "unrelated business taxable income", income received from the conduct of a trade or business unrelated to its exempt purpose. "Royalties", however, are excluded from unrelated business taxable income under § 512(b)(2). The primary issue in this appeal is whether the payments Life and Casualty made to TFB were in part royalties exempt from the unrelated business income tax. The jury concluded that they were, and we conclude that this case never should have gone to the jury. We hold that the district court erred in denying the United States' motion for judgment as a matter of law. We reverse the judgment of the district court and render a decision in favor of the United States.

## A

The United States' first argument on appeal contends that the

4

district court erred in denying its motions for judgment as a matter of law, because the evidence in this case was insufficient to create a jury question that the payments Life and Casualty made to TFB were in part royalty payments. The United States asserts that there is but one reasonable conclusion permitted by the evidence: that the payments made by Life and Casualty to TFB were not royalties as a matter of law.

A motion for judgment as a matter of law in an action tried by a jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict. On review of the district court's denial of such a motion, this Court uses the same standard to review the verdict that the district court used in first considering the motion.[5] A motion for judgment as a matter of law should be granted by the trial court if, after considering all the evidence in the light and with all reasonable inferences most favorable to the party opposed to the motion, the facts and inferences point so strongly and overwhelmingly in favor of one party that the court concludes that reasonable people could not arrive at a contrary verdict.[6]

The determination of whether income is § 512(b)(2) royalty income is to be "determined by all the facts and circumstances of

---

[5]*Spuler v. Pickar,* 958 F.2d 103, 105 (5th Cir.1992) (*citing Ellison v. Conoco, Inc.,* 950 F.2d 1196, 1203 (5th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 3003, 125 L.Ed.2d 695 (1993)); *see also Bridges v. Groendyke Transport, Inc.,* 553 F.2d 877, 878 (5th Cir.1977).

[6]*Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969).

each case".[7]    Neither the Internal Revenue Code nor the regulations, however, define "royalty".    The parties and the district court use the definition of royalty found in Revenue Ruling 81-178, which defines "royalty" as a payment that relates to the use of a valuable right, such as a name, trademark, trade name, or copyright.[8]    The Ruling further provides that payments for personal services do not constitute royalties.[9]

The United States argues that under this definition, the payments from Life and Casualty were not royalties as a matter of law, and that the district court erred in sending this case to the jury.    The language in the contract between Life and TFB, the United States argues, is unambiguous and is not susceptible to any interpretation but that the arrangement was one for services, not for royalties.

The agreement at issue in this case provides that TFB would furnish Life and Casualty with its "good offices, influence, and prestige in promoting the general welfare" of the insurance companies.    In addition, TFB agreed "[t]o promote among policyholders of [Life] the value of maintaining in force life insurance carried with [Life]".    TFB also agreed "[t]o furnish all facilities ... necessary to accommodate State and District Sales Directors in carrying on the acquisition of new life insurance for [Life], and servicing [Life's] policyholders within the territory

---

[7]26 C.F.R. § 1.512(b)-1 (1994).

[8]Rev.Rul. 81-178, 1981-2 C.B. 135.

[9]*Id.*

6

of Farm Bureau". Further, the contract provided that TFB agreed to furnish Life and Casualty with clerical, telephone, and administrative services. The district court concluded that the language in the agreement in this case was "uncertain when applied to the subject matter of the agreement". We find no such uncertainty.

In its agreements with Life and Casualty, TFB agrees to provide Life and Casualty with substantial services. TFB agreed to use its own offices, its influence and prestige to promote Life, and to provide Life with stationary and postage, secretarial and clerical help, office supplies, furniture, and equipment. Nowhere in the agreements is a "royalty" mentioned. This is not a situation in which Life and Casualty agreed to compensate TFB solely for the benefit of association with the "Farm Bureau" name. Instead, this is a situation in which the agreements plainly require TFB to provide substantial services to the insurance companies; the plain language of the agreements demonstrates that the agreements were strictly for services and did not contemplate a royalty payment. Had the parties wished to create a royalty arrangement, they could have done so at the time of contracting. Or, the parties could have amended the original agreement to provide that TFB would be paid royalties for allowing the insurance companies to use its name. TFB availed itself of neither of these options; instead, as an afterthought, TFB filed amended tax returns contending that the payments it received from Life and Casualty were royalty payments and were therefore exempt from

7

taxation.

To create a jury question, there "must be a conflict in substantial evidence".[10] In this case, there was not a conflict in substantial evidence. We conclude that the district court erred in denying the United States's motion for judgment as a matter of law and in sending this case to the jury.

B

The cross-appeal filed by TFB asks this Court to reverse the district court order granting partial summary judgment to the United States on the question of whether TFB's association with Life and Casualty were "unrelated business activity".

We review de novo the district court's grant of summary judgment.[11] Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[12]

To constitute taxable, "unrelated business income" under § 511 to § 513, the activity that generates the income must satisfy three elements: (1) the activity from which the income is derived must be "a trade or business"; (2) that is "regularly carried on" by the taxpayer,[13] and (3) the conduct of the trade or business must

---

[10]*Boeing,* 411 F.2d at 375.

[11]*Lockart v. Kobe Steel, Ltd. Constr. Mach. Div.,* 989 F.2d 864, 865 (5th Cir.1993).

[12]Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Thomas v. Price,* 975 F.2d 231, 235 (5th Cir.1992).

[13]26 U.S.C.A. § 512(a)(1) (1995).

not be substantially related to the organization's exempt purpose.[14] TFB concedes that its dealings with Life and Casualty were regularly carried on, but contends that genuine issues of material fact exist regarding whether the activity was a trade or business and whether it was substantially related to its tax exempt purpose.

Section 513(c) of the Internal Revenue Code defines trade or business as "any activity which is carried on for the production of income from the sale of goods or the performance of services". To determine whether a tax-exempt organization is carrying on a trade or business, "the court must look to see whether that institution is engaged in extensive activity over a substantial period of time with the intent to earn a profit".[15] Whether there is a profit motive is our key inquiry.

We find that the United States satisfied its summary judgment burden to demonstrate the absence of a material fact that TFB's association with Life and Casualty constituted a trade or business. Both Life and Casualty consistently generated a profit. Both companies competed with other insurance companies in the state, and Life and Casualty were among the more profitable operations in the state. TFB received a substantial income from Life and Casualty. Further, TFB actively worked to endorse Life and Casualty; indeed, in the Farm Bureau newsletter, TFB ran no other insurance

---

[14]26 U.S.C.A. § 513(a) (1995); *see also Texas Apartment Ass'n v. U.S.,* 869 F.2d 884, 886 (5th Cir.1989) (*citing Louisiana Credit Union League v. United States,* 693 F.2d 525, 530-31 (5th Cir.1982)).

[15]*Louisiana Credit Union League v. United States,* 693 F.2d 525, 532 (5th Cir.1982).

provider's advertisements but those of Life and Casualty.

In response to the United States' summary judgment evidence, TFB offered nothing but denials of its intent to generate a profit. TFB argued that the motivation for its agreements with Life and Casualty was to promote the sale of insurance to those who lived in rural areas and were underserved by the insurance industry, and that there was no evidence that TFB intended to make a profit through its agreements with Life and Casualty. TFB contends that it realized a huge profit through its dealings with Life and Casualty without intending to do so. We agree with the district court that the ends achieved can be a good indication of an organization's motive for conducting an activity,[16] and that there was no genuine issue of material fact whether TFB engaged in a trade or business.

TFB concedes that the second element of the inquiry is satisfied, that its dealings with Life and Casualty were regularly carried on. Having determined that TFB was regularly engaged in trade or business, we turn now to the final inquiry, whether TFB's association with Life and Casualty was substantially related to its exempt function.

In determining whether an activity is substantially related to the exempt purpose of an organization, we must examine "the relationship between the business activities which generate the particular income in question ... and the accomplishment of the

_____

[16]*See Portland Golf Club v. Commissioner,* 497 U.S. 154, 166-67, 110 S.Ct. 2780, 2788-89, 111 L.Ed.2d 126 (1990).

10

organization's exempt purposes".[17]  For the conduct of a trade or business to be substantially related to the tax exempt purpose, the business activity must "contribute importantly" to the accomplishment of the tax-exempt purpose.[18]  A trade or business is "related" to an organization's tax-exempt purpose "only where the conduct of the business activities has a causal relationship to the achievement of the exempt purposes", and it is "substantially" related "only if the causal relationship is a substantial one".[19]  To determine whether the business activity contributes importantly to the accomplishment of the exempt purpose, "the size and extent of the activities involved must be considered in relation to the nature and extent of the exempt function which they purport to serve".[20]  This is a fact-sensitive inquiry and must be made on a case by case basis.[21]

TFB argues that its association with Life and Casualty is related to TFB's exempt purpose as a § 501(c)(5) agricultural association because Life and Casualty were formed to serve rural areas as their primary market.[22]  TFB argues that Life and

---

[17]26 C.F.R. § 1.513-1(d)(1) (1994).

[18]26 C.F.R. § 1.513-1(d)(2) (1994).

[19]*Id.*

[20]26 C.F.R. § 1.5131(d)(3) (1994).

[21]*Hi-Plains Hosp. v. United States,* 670 F.2d 528, 531 (5th Cir.1982).

[22]Life and Casualty stated two goals at the time of their formation:  to provide insurance to rural residents at reasonable rates, and to provide member benefits for Farm Bureau members, most of whom live in rural areas.

Casualty's presence in rural areas, their special attention to customers in rural areas, and because Life and Casualty sell the type of insurance farmers and ranchers need, Life and Casualty's business is substantially related to TFB's tax-exempt purpose.

TFB's association with Life and Casualty does not contribute importantly to the accomplishment of its exempt purposes. While it may be true that the insurance services provided by TFB betters the conditions of those engaged in agriculture, no substantial causal relationship exists between the insurance sales and the improvement of agricultural products or the development of a higher degree of efficiency in agricultural occupations. Further, many of the people who benefitted from these insurance policies are not ranchers or farmers, and the sale of policies to such people cannot contribute to TFB's exempt purpose. Any agricultural benefits derived from Life and Casualty's insurance policies were incidental benefits. There was no substantial causal relationship between the insurance sales and the fulfillment of TFB's tax-exempt purpose. Accordingly, we conclude that the district court properly found that the income derived from Life and Casualty was unrelated business income, and was taxable under I.R.C. § 511.

III

We REVERSE the decision of the district court denying the United States' motion for judgment as a matter of law, affirm the district court's grant of summary judgment in favor of the United States, and render a decision that the income TFB received from Life and Casualty was unrelated business income as a matter of law.