IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 95-30141

---

GWENDOLYN LAWRENCE AND
NOLES LAWRENCE, JR.,

                                        Plaintiffs-Appellees,

                        versus

GENERAL MOTORS CORPORATION,

                                        Defendant-Appellant,

and

UNIDENTIFIED PARTY, and Its Insurer XYZ
Insurance Co.,

                                        Defendant.

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

January 16, 1996

Before HIGGINBOTHAM and DUHÉ, Circuit Judges, and SCHWARZER[*],
District Judge.

HIGGINBOTHAM, Circuit Judge:

Gwendolyn and Noles Lawrence sued General Motors Corporation
under Louisiana law, alleging that Mrs. Lawrence's auto-accident
injuries were caused by construction and design defects in their
Pontiac Bonneville, which GM manufactured in 1987. The jury found
that the car was defective in both construction and design and
returned a verdict awarding damages to the Lawrences. GM appeals.
We conclude that the evidence was insufficient to support a finding

---

[*]District Judge of the Northern District of California,
sitting by designation.

of a construction defect or a design defect in the Lawrences' car. We reverse and render judgment for GM.

## I.

In August 1989, Noles Lawrence paid $3,000 at an auto auction for a used Pontiac Bonneville that General Motors Corporation had manufactured in 1987. The Bonneville had been partially submerged in water in a May 1989 accident and had accumulated 47,252 miles. Mr. Lawrence made some repairs to the car, and the Lawrences drove it for approximately 50,000 additional miles.

On October 5, 1993, Mrs. Lawrence suffered severe injuries when she started the Bonneville and accelerated unexpectedly into a tree. According to Mrs. Lawrence, she turned on the car engine and waited briefly for it to warm up. She then put the car in drive and placed her right foot on the accelerator, at which time the car suddenly accelerated to a "vertiginous speed" — apparently up to around forty to fifty miles per hour — crashing into a tree located about twenty-five yards away from where the car had been parked. Mrs. Lawrence indicated that she had put her foot on the brake but was unable to stop the car.

The Lawrences sued GM, alleging that Mrs. Lawrence's injuries and Mr. Lawrence's resulting loss of consortium were caused by defects in GM's construction and design of the Lawrences' Bonneville. See La. Rev. Stat. Ann §§ 9:2800.55-.56 (West 1995). The Lawrences submitted a mechanical engineer, Dr. Frederick J. Brown, Ph.D., as their expert witness. Over GM's objections, the district court qualified Dr. Brown as an expert witness and allowed

2

him to offer opinion testimony on the role of the construction and design of the Bonneville's engine in causing Mrs. Lawrence's accident.

Dr. Brown testified that he had examined the car and concluded that it had accelerated unexpectedly because the engine's throttle was stuck in an open position. He opined that the cruise control cable had been pulling on the throttle blades, noting a gap between the plastic sleeve on the cruise control cable and the bracket at the end of the cable. Dr. Brown determined that the sleeve on the cruise control cable was lodged behind the cable sheath so that it could not retract. He suggested that a longer sleeve might have prevented Mrs. Lawrence's accident.

GM's expert, Richard Maiers, testified that he had examined the car as well. He noted that the bracket for the cruise control servo was bent and opined that Mrs. Lawrence's accident had caused the servo and bellows to move away from the bracket, pulling the throttle blades open and causing the sleeve on the cruise control cable to move to where it was caught on the cable sheath. Maiers observed that the bracket had been bent approximately 1.5 inches, leaving a gap not ordinarily present. He testified that there would be no space for a longer sleeve on the cruise control cable with an undamaged bracket. He concluded that the force of Mrs. Lawrence's crash into the tree was responsible for the state of the sleeve and cable after her accident.

At the close of evidence, the seven-person jury found that the Bonneville was "unreasonably dangerous" in both construction and

3

design when it left GM's control, and that Mrs. Lawrence and GM were each 50% at fault. The jury awarded $475,000 in damages to Mrs. Lawrence and $12,500 to Mr. Lawrence.

GM argued in its post-trial motion for judgment as a matter of law that there was no evidence of a construction or design defect. The district court "agree[d] that there was little evidence tending to show a defect in the construction of the mushroom sleeve," but concluded that, "even if the jury erred in concluding that a defect in construction existed, the jury award remains unaffected because the jury properly concluded that there was a defect in the design of a mushroom sleeve." After reducing Mrs. Lawrence's damage award to $420,000, in part to reflect stipulations as to her past medical expenses, the district court entered judgment against GM awarding $210,000 to Mrs. Lawrence and $6,250 to Mr. Lawrence.

## II.

GM raises two arguments on appeal. First, GM contends that the district court committed reversible error in allowing Dr. Brown to testify as an expert on automotive design. Second, GM argues that the evidence was insufficient to support a finding that the Bonneville was defective in either construction or design. We need not decide whether the district court abused its discretion in admitting Dr. Brown's expert testimony. We agree with GM that, even with Dr. Brown's testimony, the evidence is insufficient as a matter of law to support a finding under Louisiana law of a construction or design defect in the Lawrences' Bonneville.

4

A.

Louisiana law provides:

> A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer.

La. Rev. Stat. Ann. 9:2800.55. In reviewing a court's denial of a motion for judgment as a matter of law following a jury verdict, we must consider all the evidence in the light most favorable to the nonmoving party, to determine whether there was sufficient evidence to permit any reasonable fact finder to arrive at the jury's verdict. <u>Texas Farm Bureau v. United States</u>, 53 F.3d 120, 123 (5th Cir. 1995). The Lawrences presented no evidence demonstrating that the sleeve on the cruise control cable in their Bonneville deviated from GM's specifications or performance standards, or from components in identical GM vehicles. In the absence of such evidence, a reasonable jury could not have concluded that there was a defect in the construction of the sleeve in the Lawrences' car.

B.

We likewise agree that a reasonable jury could not have found that, under Louisiana law, the Lawrences' Bonneville was defective in design. Louisiana law provides:

> A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:
>
> (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and

5

(2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. . . .

La. Rev. Stat. Ann. § 2800.56. In other words, a plaintiff suing in Louisiana must demonstrate "that the risk avoided by using the alternative design (magnitude of damage discounted by the likelihood of its occurrence) would have exceeded the burden of switching to the alternative design (added construction costs and loss of product utility)." Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 181 (5th Cir. 1990).

Even assuming that the jury could have credited Dr. Brown's opinion that the sleeve on the cruise control cable was responsible for Mrs. Lawrence's accident, the evidence as to an alternative design is insufficient to establish GM's liability under Louisiana law. The only suggestion of an alternative design was Dr. Brown's recommendation of a longer sleeve.[1] There is scant evidence, however, showing that the "likelihood that [the sleeve used] would cause [Mrs. Lawrence's] damage and the gravity of that damage outweighed the burden on [GM] of adopting [a longer sleeve] and the adverse effect, if any, of [a longer sleeve] on the utility of the product." See La. Rev. Stat. Ann. § 2800.56. Though Dr. Brown concluded that a longer sleeve could have prevented Mrs. Lawrence's accident, he did not elaborate on the actual likelihood of avoiding

_____

[1]Dr. Brown testified at trial: "Well, if the little plastic sleeve had been a little longer, then there wouldn't have been room for the sheath of the cable to catch on it and hang up the way it did."

6

the probable damage through an alternative design.  Moreover, Dr. Brown did not address the burdens or adverse utility effects of a longer sleeve, nor did he counter Maiers' explanation that a longer sleeve would not fit in an undamaged engine.  Since there was no other evidence of a feasible alternative design apart from Dr. Brown's longer-sleeve testimony, the judgment holding GM liable for a design defect cannot be sustained.  See Morgan v. Gaylord Container Corp., 30 F.3d 586, 590-92 (5th Cir. 1994) (applying La. Rev. Stat. Ann. § 9:2800.56 and holding that opinion by plaintiff's expert that alternative design would have been "`obvious[ly]' inexpensive and easily implemented" was insufficient to withstand manufacturer's motion for summary judgment in absence of other evidence on alternative design's feasibility and utility effects); Lavespere, 910 F.2d at 183.[2]

## III.

For the foregoing reasons, we REVERSE the judgment of the district court RENDER judgment for GM.

---

[2]The Lawrences urge that Maiers admitted at trial that GM installed defective Speareflex cables in 1987 Bonnevilles.  This argument is unavailing.  The Speareflex cable refers to the accelerator cable, which is distinct from the cruise control cable. Dr. Brown, however, testified only that the sleeve on the cruise control cable was responsible for Mrs. Lawrence's accident; he did not suggest that the accelerator cable caused the accident, nor did he indicate there was anything defective about the accelerator cable in the Lawrences' car.