UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 95-10723
_____

CARROTHERS CONSTRUCTION CO., INC.,

Plaintiff-Appellee,

versus

DALLAS TX CITY OF; NAT'L PROJECTS, INC.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Texas
(3:90-CV-70-BD)
_____

October 11, 1996

Before KING, JONES, and SMITH, Circuit Judges.

EDITH H. JONES, Circuit Judge:[*]

This case concerns claims by Carrothers Construction Company ("Carrothers") against the City of Dallas ("the City") and National Projects, Inc. ("NPI") for the breach of two construction contracts. After a three week trial, the jury found that NPI and the City had breached both contracts and awarded Carrothers $1,914,030 in damages. The trial court entered judgment

_____

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

accordingly and assessed an additional $1,517,402 in pre-judgment interest against NPI and the City. The court also awarded against NPI only attorney's fees of $629,120 for the trial and up to $70,000 for the appeal. NPI and the City now appeal. We affirm the trial court's judgment.

## I. BACKGROUND

In 1984, the U.S. Environmental Protection Agency determined that the City was not in compliance with federal clean water standards. To comply with the EPA's mandate, the City entered into a $104 million contract with Blount Brothers Construction Company to enlarge its Southside Wastewater Treatment Plant. This enlargement consisted of the construction of nine new buildings which would be connected by an underground piping system.

One year after hiring Blount, the City became dissatisfied with its performance and terminated the contract. In its place, the City hired NPI to manage the completion of the construction begun by Blount. NPI devised a plan whereby the City would re-bid the project, utilizing, 14 prime contracts to finish the enlargement. NPI would coordinate the bids and advise the City on awarding the contracts. NPI and the City also agreed that the City would assign its contracts with the prime contractors to NPI, NPI would manage the project, and the City would pay the prime contractors.

Carrothers bid on several of the prime contracts. In July 1987, the City awarded Carrothers Contract 87-712, in the amount of $880,000, for the construction of the flow splitter and grit buildings, and Contract 87-730, in the amount of $1,525,000, for the construction of the filter building. Carrothers was responsible for completing the concrete and resteel of the buildings; other contractors would complete their mechanical, electrical, and piping systems.

Carrothers entered into contracts with the City for both projects, and the City assigned the contracts to NPI. Because of the EPA's order, the contracts recognized that "time was of essence" in completing the wastewater treatment plant enlargement. Contract 712 required Carrothers to start work on the flow splitter and grit buildings by July 27, 1987 and to complete performance by January 15, 1988. Contract 730 required Carrothers to start work on July 20, 1987 and to complete work by April 3, 1988.

In turn, the contracts provided that NPI would "coordinate the work at the project site"; "manage the construction of the project and the performance of the construction work"; be responsible for the project Master Schedule, coordinate the construction, and administer the contract; "furnish as indicated in the contract documents and not later than the date when needed by the contractor, the lands upon which the work is to be done"; promptly investigate any complaint that a contractor was failing to

3

coordinate its work with other contractors; and inspect all work performed.

To carry out these responsibilities, the contracts provided that NPI had the right "to request any contractor or subcontractor cease work at a particular location" and move to another location; to suspend temporarily the work of one contractor to coordinate or expedite the work of other contractors; and to withhold payments to a contractor for unsatisfactory progress. Carrothers's work necessarily intermingled with the work of other contractors.

Immediately after the contracts were executed, problems erupted. Carrothers contends that NPI and the City failed to disclose information necessary for its work; failed to respond timely to Carrothers's requests for information; concealed deficiencies at the construction site and in work by other contractors, causing Carrothers's work to be delayed; insisted Carrothers begin work when it knew that the site was not ready; and generally failed to manage the project properly. In the end, Contract 712, which was originally scheduled to take 172 days, took an additional 274 days to be completed, for a total of 446 days. Contract 730, which was scheduled to take 258 days, took an additional 243 days to be completed, for a total of 501 days. Although NPI and Carrothers resolved a few of their disputes with change orders, which gave Carrothers additional time to complete

4

its work and absolved NPI *pro tanto* of any monetary damages, Carrothers and NPI and the City remained at odds over many aspects of the contract work.

Carrothers filed the instant diversity action against NPI and the City for breach of the two contracts and sought to recover the extra costs it incurred because of the delay in completing its work. The jury found that NPI and the City had actively interfered with Carrothers's performance of its contracts and that Carrothers had suffered substantial damages as above noted. From the judgment, including attorneys' fees and prejudgment interest, the City and NPI timely appealed.

## II. DISCUSSION

NPI and the City raise seven challenges to the trial court's judgment. They contend that (a) the "no damages for delay" provisions in the contracts preclude Carrothers from recovering monetary damages against them; (b) Carrothers failed to segregate the costs due to its own delay from the costs due to external delays in calculating damages; (c) the contracts provided that Carrothers waived pre-judgment interest and attorneys' fees; (d) the trial court erred in instructing the jury on calculating damages; (e) the damage calculations erroneously included costs by Carrothers's corporate parent, Pemco, Inc.; (f) the trial court erred in determining that NPI was liable for damages as a

5

contractual assignee; and (g) the damage awards were grossly excessive. Each of these will be discussed in turn.[1]

## A.    No Damages for Delay Clause

NPI and the City first contend that Contracts 712 and 730 precluded Carrothers from obtaining monetary damages against them. The contracts contain "no damages for delay" provisions, which state:

> ... and no adjustment shall be made to the contract price and the contractor shall not be entitled to claim or receive any additional compensation as a result of or arising out of any delay resulting in adjustment to the working time hereunder, including delays caused by the act or negligence of the owner.
> * * *
> If the work of a contractor is delayed because of any act or omission of any other contractor, contractor shall have no claim against owner or construction manager on that account other than an extension of time.
> * * *
> Contractor shall accept the risk of any delay in delivery of equipment or materials procured by owner, and if the work is delayed, he shall have no claim for damages or contract adjustment other than an extension of time and the waiving of liquidated damages caused by the delay.

---

[1]    This court applies its customary standards of review. "A motion for judgment as a matter of law in an action tried by a jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." Texas Farm Bureau v. U.S., 53 F.3d 120, 123 (5th Cir. 1995). We review the district court's ruling on a motion for judgment as a matter of law de novo. Conkling v. Turner, 18 F.3d 1285, 1300 (5th Cir. 1994). Such a motion should be granted only if, "after considering all the evidence in the light and with all reasonable inferences most favorable to the [non-movant], the facts and inferences point so strongly and overwhelmingly in favor of one party that ... reasonable persons could not arrive at a contrary verdict." Texas Farm Bureau, 53 F.3d at 123 (internal citations omitted).

We review the denial of a motion for a new trial for an abuse of discretion. Calcasieu Marine Nat'l Bank v. Grant, 943 F.2d 1453 (5th Cir. 1991).

While Texas courts generally uphold provisions preventing damages for delay, the provisions are not absolute. Texas courts have held that no damages for delay clauses do not preclude a contractor from recovering damages when the delay (a) is not contemplated by the parties; (b) is so long as to justify abandonment of the contract; (c) is caused by the owner's fraud or bad faith; or (d) is caused by the owner's active interference with the contractor's performance. <u>City of Houston v. R.F. Ball Construction Company, Inc.</u>, 570 S.W.2d 75, 77 & n.1 (Tex.Civ.App. --Houston[14th Dist.] 1978, writ ref'd n.r.e.).

The leading Texas decision on the exceptions to no damage for delay clauses, <u>Housing Authority of Dallas v. Hubbell</u>, 325 S.W.2d 880 (Tex.Civ.App. --Dallas 1959, writ ref'd n.r.e.), addressed a situation not unlike the instant case. The Housing Authority had contracted with several principal contractors for the construction of a then-$15 million dollar housing project. One of the contractors sued to recover damages it incurred because of delays in its work. Its contract contained a no damages for delay provision. However, the court upheld damages against the Housing Authority because it had engaged in eleven acts and omissions which substantially interfered with the contractor's performance. The court explained that these acts and omissions included:

> (1) Failure to plan development and construction of the whole project; (2) Failure to furnish master progress schedule; (3) Failure to coordinate work of various prime contractors; (4) Failure to proceed with

7

underground utilities contract until August 1, 1952; (5) Failure to proceed with the sidewalk contract until July 1, 1953; (6) Failure to expedite flow of information; (7) Failure to decide on type of water heater; (8) Failure to deliver water heaters; (9) Arbitrary and capricious requirements of Architects; (10) Instructions to asphalt tile sub-contractors; (11) Refusal to accept the buildings within a reasonable time after August 25, 1953.

Id. at 889. The court explained that "[t]he 'no damages for delays' provision did not give the Owner a license to cause delays 'willfully,' by 'unreasoning action,' 'without due consideration,' and in 'disregard for the rights of other parties,' nor did the provision grant Owner immunity from damages if delays were caused by Owner under such circumstances." Id. at 890.

In the instant case, the evidence was sufficient for a reasonable jury to find that NPI and the City actively interfered with Carrothers's completion of the contracts. The evidence supports Carrothers's contentions that NPI and the City (1) generally failed to coordinate the work of the contractors; (2) failed to disclose the Master Schedule, despite repeated requests from Carrothers and other contractors; (3) failed to disclose that NPI and the City knew before awarding Carrothers's contracts that some form of corrosion protection system (cathodic protection) would have to be installed before Carrothers could begin work on the filter building, even though NPI and the City knew that this system would substantially delay Carrothers's work; (4) issued a notice to proceed to Carrothers when they knew the site was not

8

ready; (5) failed to disclose that NPI and the City had granted the piping contractor a 42-day extension, which substantially delayed Carrothers's work, even though NPI and the City had granted the extension before awarding the contracts to Carrothers; (6) failed to disclose that Carrothers would have to perform remedial work, such as installing pier drillers in the filter building, before it could begin construction there; (7) failed to arrange for remedial work on the 66-inch pipeline connecting the ends of the filter building; (8) failed to disclose that defective work had to be remedied on the filter building, even though NPI and the City knew at the time the contracts were awarded that work had to be done; (9) failed to inform Carrothers that NPI and the City had not acquired a pump for the filter building; (10) failed to respond timely to requests for information on the grit building; and (11) failed to supply appropriate pre-cast panels for the grit building.

Further, there was sufficient evidence to find that these actions and omissions by NPI and the City substantially hindered Carrothers's performance. Numerous witnesses testified about how each of appellants' actions and omissions delayed Carrothers's work. Carrothers also maintained extensive contemporaneous documentation of the delays it encountered during construction and the costs it incurred because of NPI's and the City's interference. These costs included extra days of labor, extra days' rent on equipment, increased insurance and bonding costs, efficiency losses because Carrothers had to re-sequence its work, productivity losses

because the contract site was crowded, costs incurred because work had to be performed in the winter rather than in the summer and fall, and losses from lower worker productivity as the project dragged on.

NPI and the City contend, however, that they did not actively interfere with Carrothers's work. First, they point out that Carrothers requested the notice to proceed on the flow splitter, and thus they should not be responsible for the construction site's not being ready. We do not find this contention persuasive. Carrothers requested the notice based on appellants' representations about the state of the project. Had Carrothers been fully informed that its work could not begin, it is highly unlikely appellee would have requested the notice. NPI and the City should have informed it that the construction site was not ready.

Second, NPI and the City contend that they had no contractual duty to disclose the Master Schedule. That fact is not dispositive. NPI and the City had a contractual duty to coordinate the contractors' work schedules and to respond to requests for information about scheduling difficulties. Given those duties and the ensuing problems, NPI had a responsibility either to disclose the Master Schedule so the contractors could schedule their work around each other or to ensure otherwise that their work was coordinated. The evidence supported Carrothers's contentions that NPI and the City did neither.

10

Third, NPI and the City contend that they had no duty to disclose that they had granted the piping contractor a 42-day extension, even though the extension had been approved at the time the contracts were awarded to Carrothers. To the contrary, it is undisputed that Carrothers could not begin its work until after the piping contractor had finished. That NPI and the City required Carrothers to mobilize at the site, knowing that Carrothers could not begin work at that point, constituted active interference. See U.S. Steel Corp. v. Missouri-Pacific R.R. Co., 668 F.2d 435, 438-39 (8th Cir.), cert. denied, 459 U.S. 836 (1982).

Fourth, NPI and the City contend that they had not made a decision about the cathodic protection until after Carrothers had been awarded the contracts. The evidence showed, however, that NPI and the City knew they would have to install some type of cathodic protection when they awarded the contracts; that they were evaluating different types of cathodic protection when they awarded the contracts; that they knew they would install some type of cathodic protection when they awarded the contracts; and that they knew installing that protection would delay Carrothers's work.

Fifth, NPI and the City contend that Carrothers was not delayed as a result of the remedial work done on the 66-inch pipeline, and that Carrothers had itself caused a 45-day delay by its installation of the 36-inch pipe. But numerous witnesses -- including appellants' expert-- testified that Carrothers was delayed because of remedial work on the 66-inch pipeline. Further,

11

the evidence showed that Carrothers was delayed in installing the 36-inch pipeline because NPI and the City failed to respond timely to Carrothers's requests for information.

Sixth, NPI and the City contend that they took steps to coordinate all the prime contractors, such as holding weekly meetings and placing employees at the site. However, those actions do not relieve NPI and the City of their duties to disclose material information affecting Carrothers's work and to represent accurately the state of the project.

Generally, NPI and the City contend that they did not actively interfere with Carrothers's work, but merely failed to take various actions, their oversights amounting to negligence rather than to the intentional conduct that is not covered by a no damages for delay provision. This distinction ignores the jury findings, supported by the evidence and based on unobjected-to instructions that they could only hold appellants liable for delay caused by (a) active interference; (b) misrepresentations or bad faith; or (c) delay of an unreasonable length of time.

## B. Carrothers's Calculation of Damages

Next, NPI and the City challenge the jury's finding that Carrothers suffered $1,914,030 in damages. They contend that Carrothers failed to segregate the damages it incurred because of its own actions from the damages caused by NPI and the City's interference. Specifically, NPI and the City contend that

12

Carrothers's calculations erroneously included damages incurred because of (a) Carrothers's own 45-day delay in installing the 36-inch pipe; (b) 14 days' charges that had been resolved by a change order; (c) delays after the pier drillers had been installed, even though no external forces then prevented Carrothers from completing the flow splitter; and (d) Carrothers's inability to fulfill its own unrealistic work schedule.

Our careful review of the evidence before the jury shows that it does not compel a finding for appellants. Numerous witnesses testified that Carrothers was not responsible for any of the delays. In addition to Carrothers's personnel and experts, Carrothers's superintendent on the site, who at the time of trial was employed by NPI's corporate parent Morrison-Knudsen, Inc., testified that none of the delays were caused by Carrothers. Similarly, NPI's construction coordinator at the site testified that he could not recall any instance in which Carrothers delayed its own work. Indeed, the only person testifying that Carrothers caused any delays was appellants' expert witness, whom the jury was not required to believe.

Further, Carrothers extensively documented its damage calculations. Carrothers presented lengthy testimony setting forth the target dates for certain items of work, the dates on which the work was actually performed, and the interferences that extended the time required by Carrothers to complete the work, and explaining its damage calculations. Carrothers separated its

13

calculations into two time periods --the time covered by the change orders and the time after the change orders-- and into several categories --extended equipment rentals, additional labor, extended field office overhead, additional materials costs, additional home office costs, and additional bond and insurance costs. These calculations were sufficient to prove Carrothers's damages to a reasonable certainty.

### C.   Pre-Judgment Interest and Attorney's Fees

NPI and the City next argue that their contracts precluded Carrothers from recovering pre-judgment interest or attorney's fees. The contracts contain an addendum providing that:

> Unless otherwise authorized by the Dallas City
> Council, at the request of the City Manager,
> no contractor of the City of Dallas shall be
> entitled to interest on any delayed, disputed,
> or delinquent payment, or attorney's fees in
> any dispute to collect such payment.

This addendum appears in the contract section concerning payment of monthly and final progress payments. The addendum was probably intended to limit a contractor's right to recover against the City under TEX. CIV. STAT. ART. 601f (1992) (now repealed), which created a right for contractors to recover against a governmental entity that failed to pay timely for the contractor's goods or services. The instant case does not involve whether the City timely paid for Carrothers's work: the City has paid Carrothers the original contract amounts. Moreover, Carrothers's suit sought damages beyond the contract amounts --costs incurred for extra days

of labor, extra days of equipment rental, and the like. The addendum does not appear to exclude interest or attorneys' fees on contract damages of these types.

NPI and the City's cited cases, stating the general proposition that parties to a contract may waive or limit damages, are factually inapposite. In <u>Computer-Link Corp. v. Recognition Equipment, Inc.</u>, 670 F.Supp. 455 (D.Mass. 1987), <u>aff'd without published opinion</u>, 860 F.2d 1072 (1st Cir. 1988), the District of Massachusetts addressed whether a contractual clause stating that "neither party shall be liable for any indirect, special, or consequential damages arising out of this agreement," precluded the contractor from recovering damages. No such clause exists in the instant contracts. <u>Cantrell v. Broadnax</u>, 306 S.W.2d 429 (Tex.Civ.App. --Dallas 1957, no writ) concerned the forfeiture of improvements on real estate because of the owner's default in making payments. <u>Temple Eastex, Inc. v. Old Orchard Creek Partners, Ltd.</u>, 848 S.W.2d 724, 729 (Tex.App. --Dallas 1992, writ denied) concerned a waiver for damages covered by insurance.

### D. Jury Instructions on Damages

Next, NPI and the City contend that the trial court did not clearly instruct the jury that they should only award damages which were caused by appellants' active interference with Carrothers's work. We reject this contention. Taken as a whole, the charge so informed the jury:

15

What sum of money, if paid now in cash, would fairly and reasonably compensate Carrothers Construction Company for the damages, if any, caused by the defendant's breach of Contract 87-712 [and 87-730]?

**Do not include any damages from delays unless you find that: (a) the defendants actively interfered with Carrothers's work**; (b) the damages were caused by misrepresentation or other bad faith; or (c) the damages were caused by delay which has extended such an unreasonable length of time that the party delayed would have been justified in abandoning the contract. (emphasis added)

You are instructed that the term "active interference" means that the City of Dallas would have to have committed some affirmative, willful act, in bad faith, to unreasonably interfere with Carrothers's compliance of the terms of the construction contract.

This instruction does not create a substantial doubt as to whether the jury was properly instructed. The instruction states that the jury can only calculate damages that resulted from NPI and the City's active interference. Moreover, the evidence, including testimony from one of Morrison-Knudsen's employees, suggested that all of Carrothers's delays were caused by appellants' active interference, a situation that would render any instructional error harmless.

E.    **Pemco's Costs**

NPI and the City contend that the trial court erred in allowing Carrothers to include in its damages calculations overhead and home office costs incurred by its corporate parent, Pemco, Inc.

They contend that Carrothers should not be able to collect those costs because Pemco was not in privity of contract with NPI and the City. We disagree. Substantial evidence demonstrated the closely related nature of Carrothers as a wholly owned subsidiary of Pemco. Carrothers's damages were Pemco's damages, and vice versa. Just as a contractor under Texas law may recover damages for third parties who are acting on its behalf, see, e.g., North Harris Cty. Junior College Dist. v. Fleetwood Const. Co., 604 S.W.2d 2467, 255 (Tex. Civ. App. -- Houston [14th Dist.] 1980, *writ ref. n.r.e.*), so it would follow that Carrothers's damages should include the very important expenses of contract performance borne by Pemco.

## F. NPI's Liability as an Assignee

NPI and the City contend that the district court erred in entering judgment against NPI. They contend that, because NPI acted as an agent on behalf of a known principal, it cannot be held liable. Appellants waived any objections to NPI's separate liability by failing to object to the court's instructions accompanying Jury Questions 1 and 3, which state that "[f]or the purposes of this case, NPI and the City of Dallas are both bound by the provisions of the contract and the implied duties arising thereunder."

## G. The Damage Awards

17

NPI and the City contend that the damage awards were grossly excessive and that $434,000 is the maximum amount Carrothers should be awarded. We disagree. The $435,000 figure apparently was obtained from Carrothers/Pemco's accountants and represents the amount necessary for Carrothers to recover in order to continue bidding on public projects. That figure does not represent the amount of damages actually incurred because of the delays in the instant contracts. Further, as discussed above, Carrothers presented extensive documentation of its calculation of damages.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the trial court's judgment.

18