United States Court of Appeals
Fifth Circuit

**F I L E D**

December 13, 2004

Charles R. Fulbruge III
Clerk

**REVISED DECEMBER 20, 2004**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 03-60181

DAVID CAMPBELL,

Plaintiff - Appellee,

versus

CITY OF JACKSON MISSISSIPPI, ET AL

Defendants

CITY OF JACKSON MISSISSIPPI

Defendant - Appellant.

Appeal from the United States District Court
For the Southern District of Mississippi, Jackson
(No. 3:00-CV-406-WS)

Before GARZA, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Defendants City of Jackson et al. were found liable for race discrimination in violation of Title

VII of the Civil Rights Act of 1964 and appeal from a denial of motion for judgment as a matter of

law. For the following reasons, the decision of the district court is affirmed.

**FACTS AND PROCEEDINGS**

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

David Campbell, who is white, has been employed by the City of Jackson Fire Department since July, 1984. In February, 1998, Campbell scored second highest on the Fire Department's test for promotion to captain. In May, 1998, after the Fire Department sought and received approval of the promotion list from the United States Department of Justice in accordance with a 1974 consent decree,[1] Campbell and eighteen others were promoted. During the two-month delay between the scheduled captain-promotion date (March 15, 1998) and the actual promotion date (May 25, 1998), several more captain positions opened up, allowing the Fire Department to promote more captain candidates from the list of those eligible for promotion according to the test. The new captains were promoted in waves beginning on May 25 and continuing until May 29. Because the new captains' seniority would be determined by their start date as captains, and because Campbell was scheduled for promotion on May 27, the eleven promotees that were promoted on May 25 and May 26 have more seniority than Campbell.[2]

After his promotion, Campbell sought to train to become a district chief. He was told that there was a six-month probationary period for newly-promoted captains during which they could not train. After that period, Campbell signed up for opportunities to work out of rank as an acting district chief in order to train to become a district chief. Campbell trained once in February 1999 and had the opportunity to do so again in April, 1999, but was told not to do so because it conflicted with

[1] On March 24, 1974, the City of Jackson entered into a consent decree with the United States Department of Justice. The Department of Justice had investigated the City and concluded that the City had discriminated against black employees in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e *et seq.*

[2] The appellee's brief notes: "With regard to the issue of date of rank, the evidence is undisputed that Davis [sic] Campbell, a Caucasian, who scored the second highest score on the captain's test was not promoted until May 27, 1998. In contrast, Rodney Phillips, an [A]frican-[A]merican who scored the thirteenth highest score on the captain's test, was promoted May 25, 1998, two days earlier than Plaintiff."

his responsibilities as the leader of a dive team. He did not have the opportunity to train for two years thereafter because his name never came up on the training list.

In August, 2000, Campbell filed the instant civil suit against the City of Jackson and individual city employees in their respective official capacities (collectively, "the City") alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e *et seq*. The claims that ultimately reached the jury were that (1) the City discriminated against Campbell on account of his race when it delayed his promotion, and (2) the City discriminated against Campbell when it denied him the opportunity to train out of rank as an acting district chief.

Campbell argues that his promotion was delayed for two months because of his race. He alleges that this delay allowed more black captain candidates to be promoted. Furthermore, Campbell argues, his promotion was scheduled for the third day for discriminatory reasons, allowing two waves of promotees to be promoted before him and hence with greater seniority, including one black candidate who would not have been promoted but for the initial two-month delay. Campbell also argues that he was purposefully denied more opportunities to train by working out of rank as acting district chief when there were openings. Campbell alleges first that the Deputy District Chief invented and applied only to him a new rule that prevented Campbell from signing up for the list to train as a district chief for six months after he first became a captain. When Campbell finally became eligible to train as a district chief, he alleges, the rotation list was deliberately manipulated to deny him the opportunity to train.

The jury returned a verdict for Campbell in the amount of $60,000 in lost wages and $20,000 for emotional distress. The City's motion for judgment notwithstanding the verdict was denied. The

City appeals, arguing that the evidence was insufficient for a reasonable juror to conclude that race discrimination motivated the delay of promotion and missed training opportunities.[3]

## STANDARD OF REVIEW

In reviewing an order denying judgment notwithstanding the verdict, this Court uses the same standard used by the district court. *Tex. Farm Bureau v. United States*, 53 F.3d 120, 123 (5th Cir. 1995). "We test jury verdicts for sufficiency of the evidence . . . viewing all of the evidence and drawing all reasonable inferences in the light most favorable to the verdict." *Scott v. University of Miss.*, 148 F.3d 493, 504 (5th Cir. 1998) (citing *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996) (en banc)).

"The 'factual inquiry' in a Title VII case is '[whether] the defendant intentionally discriminated against the plaintiff.'" *Vadie v. Miss. State Univ.*, 218 F.3d 365, 372 (5th Cir. 2000) (quoting *USPS Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983)). Therefore, if the trial evidence, given every inference favorable to Campbell, tends to demonstrate intentional discrimination, this Court will affirm the lower court's decision.

## DISCUSSION

I.      **There was sufficient evidence for the jury reasonably to have found that the delay in Campbell's promotion and his missed opportunities to train were due to race discrimination.**

---

[3] The City, in its reply brief, flags the argument that the promotion delay is not an adverse employment action according to this Circuit's narrow interpretation of that term in Title VII. *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 878 (5th Cir. 1999); *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997); *Dollis v. Rubin*, 77 F.3d 777, 781–82 (5th Cir. 1995) (per curiam). The City contends that the delay in promotion will only tangentially affect Campbell's employment. Because the City raised this argument for the first time on appeal, this Court will not consider it. *See, e.g.*, *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 (5th Cir. 1992).

Campbell's trial presentation relied on the testimony of witnesses that were involved with the City of Jackson Fire Department and circumstantial evidence consisting of documents that demonstrated Campbell's delayed promotion and lack of opportunity to train out of rank.

Campbell provided documentation showing that he scored second highest among the candidates for promotion to captain and that he was promoted after four lower-scoring promotees had been promoted, which guaranteed their higher seniority. This group included a black promotee who, as the City concedes, would not have been promoted at all but for the two month delay.

Campbell also provided several lists of captains eligible to train out of rank as district chiefs which were supposed to be issued once a year. Instead, there are several lists for each of the years during which Campbell alleges that he was purposefully denied opportunities to train. Campbell argued to the jury that these multiple iterations of the training lists evidence that the lists were manipulated to prevent Campbell from training.

Campbell testified that based on his understanding of the 1974 consent decree, the two month delay was unnecessary and, instead, was an excuse to delay the promotions until more positions became available through attrition. Campbell also noted that because the black promotee with a lower test score was promoted before him, that promotee would have the benefits of higher seniority. He testified that he was the first person to whom the six month embargo on district chief training for new captains was applied, and that a similar restriction was not placed on new black captains. Campbell also testified about the unusual rotation-list manipulations which repeatedly prevented him from participating in district chief training opportunities and allowed several black captains to frequently train out of rank. Finally, he explained that many of the individuals whom he perceived as receiving special treatment at his expense were members of a fraternal organization known as Black Firefighters Limited.

Tony Davis, who at the time was the Division Fire Chief for the Emergency Services Division, confirmed that the six-month limitation was created for the first time to apply to Campbell. He said it had not been in existence prior to its application to Campbell and that there was no written documentation of such a rule. Davis speculated that the Fire Department was engaged in "revenge" race discrimination.

District Chief Johnny Bass testified that the rotation system for out of rank training appeared abnormal to him. He said that it typically changed only once a year, but during the years of 1998 and 1999, it changed multiple times per year. In each iteration, Davis testified, Campbell ended up at the bottom. He further speculated that "looking at the short-term list the way it kept changing . . . it appeared [that] race would be the underlying reason."

Although the City offers arguments disputing the supposed discriminatory motives behind its actions, it is not for this Court to re-weigh the credibility of the witnesses. *Boeing Co. v. Shipman*, 411 F.2d 365, 375 (5th Cir. 1969) (en banc), *overruled on other grounds by Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997) (en banc). There exists a sufficient "conflict in substantial evidence to create a jury question." *Boeing*, 411 F.2d at 375.

## II.     The evidence supported the jury's verdict of $60,000 in lost wages.

The City argues that according to Campbell's testimony, the appropriate level of compensation it should be liable for is approximately $4760 and, at most, between $8000 and $9000 based on overtime compensation. The City argues that there is no reasonable basis for an award of compensatory damages of $60,000.

Campbell argued before the jury that the appropriate damages should not be based exclusively on the compensation he would have earned if he had been able to work more hours by training out of rank. Rather, Campbell argues, that figure should include opportunities to work out of rank for

extended periods of time at a higher pay scale. Moreover, Campbell explained, the lost opportunities to train and the diminished seniority would have a significant impact on his ability for future promotion, explaining that the people who were allowed to train "have gone out. They are doing administrative duties. They are doing fire ground tactics and strategies. They are allowed to settle personnel disputes. It's the experience. And when you come to [the district chief] test, you've got—they will be able to draw from that experience, which leaves me behind two years."

Furthermore, under the seniority-based promotion system, each day of promotion affects future promotion because limited spots are offered first to individuals most senior, even if only by a day. And, as Campbell testified, his rank and the number of years he has been at that rank will impact his pension upon retirement. The harm, therefore, is not only the lost opportunities to work and delayed promotion, but the potential for career advancement, greater seniority and increased salary that accompany those opportunities. As such, it is within reason that the jury computed $60,000 as Campbell's lost wages due to race discrimination.

## CONCLUSION

For the foregoing reasons, the decision of the district court is AFFIRMED.