OSVALDO AND ANA M. RODRIGUEZ, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 13909–08.　　　　Filed December 7, 2011.

Ps, citizens of Mexico and permanent residents of the United States, were the sole shareholders of E, a controlled foreign corporation. Pursuant to secs. 951(a)(1)(B) and 956, I.R.C., they included in their gross income amounts of E's earnings that were invested in U.S. property. Ps characterized these inclusions as qualified dividend income subject to preferential income tax rates under sec. 1(h)(11), I.R.C. R recharacterized these amounts as ordinary income subject to

nonpreferential income tax rates. *Held*: Inclusions in gross income as required under secs. 951(a)(1)(B) and 956, I.R.C., do not constitute qualified dividend income under sec. 1(h)(11), I.R.C.

*Patrick R. Gordon* and *Juan H. Gil II*, for petitioners.
*Roberta L. Shumway*, for respondent.

### OPINION

THORNTON, *Judge*: Respondent determined deficiencies of $316,950 and $295,530 in petitioners' Federal income taxes for taxable years 2003 and 2004, respectively. The issue for decision is whether amounts included in petitioners' gross income pursuant to sections 951(a)(1)(B) and 956[1] with respect to their controlled foreign corporation's investments in U.S. property (for brevity, section 951 inclusions) constitute qualified dividend income under section 1(h)(11).

### *Background*

The parties submitted this case fully stipulated pursuant to Rule 122. When they petitioned the Court, petitioners resided in Texas.

At all relevant times petitioners were citizens of Mexico and permanent residents of the United States. Together they owned 100 percent of the stock of Editora Paso del Norte, S.A. de C.V. (Editora).[2] Editora had been incorporated in 1976 under the laws of Mexico. In 2001 it had established operations in the United States as a branch under the name Editora Paso del Norte, S.A. de C.V., Inc.

Originally, Editora's primary business was publishing newspapers and selling newspaper advertising in Mexico. By the end of 2002 Editora had converted its primary business to developing, constructing, managing, and leasing commercial real estate and printing presses in Mexico and the United States. Editora also derived interest income from loans and royalty income from licensing intellectual property. During the years at issue Editora held significant investments of real and tangible personal property in the United States.

---

[1] All section references are to the Internal Revenue Code (Code) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Petitioner husband owned 90 percent of Editora's stock, and petitioner wife owned the other 10 percent.

On their amended 2003 and original 2004 Federal income tax returns, which they filed October 15, 2005, petitioners included in gross income $1,585,527 and $1,478,202, respectively, representing amounts of Editora's earnings invested in U.S. property and taxable directly to petitioners pursuant to sections 951(a)(1)(B) and 956. Petitioners treated the section 951 inclusions as qualified dividend income subject to preferential income tax rates under section 1(h)(11)(B). In the notice of deficiency respondent determined that the section 951 inclusions are taxable at ordinary income tax rates.

## *Discussion*

As enacted in the Jobs and Growth Tax Relief Reconciliation Act of 2003, Pub. L. 108–27, sec. 302, 117 Stat. 760, section 1(h)(11) provides preferential tax rates for "qualified dividend income". Qualified dividend income includes dividends received from a qualified foreign corporation. Sec. 1(h)(11)(B)(i)(II). The parties agree that during the years at issue Editora was a qualified foreign corporation within the meaning of the statute.

Section 951, enacted by the Revenue Act of 1962, Pub. L. 87–834, sec. 12(a), 76 Stat. 1006 (the 1962 legislation), is part of subpart F of part III, subchapter N, chapter 1 of the Code. Through subpart F (sections 951 through 964), Congress sought to limit tax deferrals by any foreign corporation that meets the definition of a "controlled foreign corporation" (CFC), as provided in section 957(a). *Elec. Arts, Inc. v. Commissioner*, 118 T.C. 226, 272 (2002). Under section 951, subject to various restrictions and qualifications, U.S. shareholders of a CFC are taxed directly on the CFC's earnings that are invested in certain types of assets in the United States.[3] Secs. 951(a)(1)(B), 956(a). The parties agree that during the years at issue Editora was a controlled foreign corporation as defined in section 957(a) and that petitioners were U.S.

---

[3] More specifically, the sec. 951 inclusion represents the U.S. shareholder's pro rata share of the CFC's earnings invested in U.S. property holdings. The sec. 951 inclusion is the U.S. shareholder's pro rata share of the *lesser* of two amounts: (1) The excess of (a) the average amounts of the CFC's investments in U.S. property as of the end of each quarter of the taxable year over (b) the CFC's earnings and profits representing previous sec. 951 inclusions; *or* (2) the amount of the CFC's "applicable earnings", as defined in sec. 956(b)(1), representing essentially the CFC's current and accumulated earnings and profits that have not already been included in its U.S. shareholders' gross incomes. See Bittker & Lokken, Federal Taxation of Income, Estates and Gifts, par. 69.11.1, at 69–72 through 69–74 (rev. 3d ed. 2005).

shareholders with respect to Editora. They also agree as to the amounts of petitioners' section 951 inclusions. They disagree as to whether the section 951 inclusions constitute qualified dividend income. The answer turns on whether a section 951 inclusion is properly characterized as a dividend.

Section 316(a) defines "dividend" for purposes of subtitle A of the Code (which includes section 1) to mean "any distribution of property made by a corporation to its shareholders" out of the corporation's current or accumulated earnings and profits. A dividend may be formally declared or it may be constructive, involving the shareholder's informal receipt of corporate property. See *Boulware v. United States*, 552 U.S. 421, 429–430 (2008); *Truesdell v. Commissioner*, 89 T.C. 1280, 1295 (1987). But in either event there must be, in the first instance, a "distribution" by the corporation. See *Boulware v. United States*, *supra* at 437 n.12.

A "distribution" entails a "change in the form of * * * ownership" of corporate property, "separating what a shareholder owns *qua* shareholder from what he owns as an individual." *Commissioner v. Gordon*, 391 U.S. 83, 90 n.5 (1968). As the Supreme Court noted:

> Any common shareholder in some sense "owns" a fraction of the assets of the corporation in which he holds stock, including those assets that reflect accumulated corporate earnings. Earnings are not taxed to the shareholder when they accrue to the corporation, but instead when they are passed to shareholders individually through dividends. * * * The question is not whether a shareholder ends up with "more" but whether the change in the form of his ownership represents a transfer to him, by the corporation, of assets reflecting its accumulated earnings and profits. [*Id.*]

A section 951 inclusion involves no change in ownership of corporate property. It arises not from any distribution of property by a CFC but from its investment in "United States property held (directly or indirectly) by the controlled foreign corporation". Sec. 956(a)(1)(A). Because there is no distribution, there is no dividend within the meaning of section 316(a), unless some special rule or qualification applies. The Code and the regulations contain no special rule or qualification to treat a section 951 inclusion as a dividend for purposes of section 1(h)(11).

In limited instances—not involving characterization as qualified dividend income under section 1(h)(11)—in which Congress has intended section 951 inclusions to be treated as

dividends, it has made express provision. See, e.g., sec. 851(b) (providing that for purposes of the qualification rules for regulated investment companies, section 951 inclusions are "treated as dividends" to the extent that under section 959(a)(1) there is a distribution out of earnings and profits of the taxable year which are attributable to the amounts so included); sec. 904(d)(3)(G) (providing that for purposes of applying limitation rules with respect to foreign tax credits, the term "dividend" includes amounts included in income pursuant to section 951(a)(1)(B)); sec. 960(a)(1) (providing that for purposes of rules applicable to indirect foreign tax credits under section 902, section 951 inclusions shall be treated "as if the amount so included were a dividend paid"). To disregard this careful legislative design and treat section 951 inclusions as dividends in the absence of express provision would tend to render these provisions superfluous or unnecessary, contrary to well-established tenets of statutory construction. See, e.g., *Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 633–634 (1973). This consideration reinforces our conclusion that section 951 inclusions are not to be treated as dividends absent express provision in the Code or the regulations.

Unlike section 951, various other Code sections expressly characterize certain types of items as distributions or dividends. See, e.g., sec. 54A(g) (as enacted in 2008, providing that allocation to S corporation shareholders of a tax credit with respect to certain bonds "shall be treated as a distribution"); secs. 302(a), 304(a), 305(c) (all providing identically that certain redemptions "shall be treated as a distribution"); sec. 551(b) (providing that certain undistributed foreign personal holding company income is included in the shareholder's gross income "as a dividend"). [4] Of particular note, the same 1962 legislation that enacted section 951, which does not provide for dividend treatment, also enacted section 1248, which provides that in certain circumstances gain from disposition of CFC stock "shall be included in the gross income of such person as a dividend, to the extent of the earnings and profits of the foreign corporation". Sec. 1248(a). The absence, in the same legislation, of any corresponding

---

[4] Sec. 551 was repealed by the American Jobs Creation Act of 2004 (AJCA 2004), Pub. L. 108–357, sec. 413(a)(1), 118 Stat. 1506.

provision for section 951 inclusions seems purposeful. Consistent with this legislative scheme, the regulations carefully distinguish "deemed dividends" under sections 551 and 1248 from "deemed inclusions" under section 951(a). Sec. 1.902–1(a)(11), Income Tax Regs. (providing that for purposes of the deemed paid foreign tax credit under section 902, the term "dividends" does not include deemed inclusions under section 951(a)).

In support of their position that section 951 inclusions should be characterized as dividends, petitioners cite this statement from a Senate report that accompanied the 1962 legislation that enacted subpart F: "Generally, earnings brought back to the United States are taxed to the shareholders on the grounds that this is substantially the equivalent of a dividend being paid to them." S. Rept. 1881, 87th Cong., 2d Sess. (1962), 1962–3 C.B. 707, 794. This Court has sometimes cited this legislative history as evidencing the general purpose of the 1962 legislation. For instance, in *Limited, Inc. & Consol. Subs. v. Commissioner*, 113 T.C. 169, 185 (1999), revd. 286 F.3d 324 (6th Cir. 2002), this Court observed that a "dividend equivalency" rationale underlies the 1962 legislation. And in *Gulf Oil Corp. v. Commissioner*, 87 T.C. 548, 571 (1986), affd. in part, revd. in part and remanded 914 F.2d 396 (3d Cir. 1990), this Court observed that under the 1962 legislation "Subpart F treats the amount of the increased investment much like a constructive dividend to the U.S. shareholders."[5] But to say that section 951

---

[5] In *Gulf Oil Corp. v. Commissioner*, 87 T.C. 548 (1986), this Court held that increases in intercompany payables on the books of a U.S. corporate shareholder represented earnings of its foreign controlled subsidiaries, resulting in deemed inclusions in the U.S. shareholder's income under secs. 951 and 956. In an introductory paragraph the Opinion framed the issue as being whether the uncollected balances in the payables account "constitute investment in U.S. property within the meaning of section 956, resulting in dividend income to petitioner". *Id.* at 550 (fn. ref. omitted). And the headnote to *Gulf Oil* states that the increases to the payable balances "represent earnings of a controlled foreign corporation invested in U.S. property at the close of the taxable year 1974 and dividend income to P." *Id.* at 549. The body of the Opinion, however, does not expressly address whether the deemed inclusions under secs. 951 and 956 should be considered to constitute dividend income, nor was any such conclusion essential to the decision upholding the Commissioner's determination that the taxpayer was required to recognize deemed inclusions under secs. 951 and 956. See *id.* at 563. Notably, however, the Court observed that the taxpayer had "complete and indefinite control over" its foreign controlled subsidiaries' earnings that were reflected in the payables on the taxpayer's own books, *id.* at 574, possibly suggesting that the Court viewed these earnings as constituting constructive dividends for reasons apart from the operation of secs. 951 and 956. In any event, *Gulf Oil* was decided under the pre-1993 version of sec. 956(a), which, as discussed *infra*, differed materially from the version of sec. 956(a) in effect for the years at issue. In these circumstances we do not view

Continued

treats a CFC's investments in U.S. property "much like" a constructive dividend is a far cry from saying that such amounts actually constitute dividends. In fact, the statutory structure and operating rules in the Code, particularly as they have evolved over time, strongly suggest that these amounts do not constitute dividends under the Code.

The formula for determining a CFC's investment of earnings in U.S. property, for purposes of a section 951 inclusion, is found in section 956(a). As originally enacted in 1962, section 956(a)(1) provided that the section 951 inclusion was to be made by reference to the amount of U.S. property that the CFC held at the end of the taxable year to the extent this amount "would have constituted a dividend * * * if it had been distributed." The clear import of this language is that because this amount has *not* been distributed, it does not in fact constitute a dividend.

In 1993 Congress eliminated the just-quoted provision ("would have constituted a dividend" etc.) as part of an amendment modifying the operation of section 956. Omnibus Budget Reconciliation Act of 1993, Pub. L. 103–66, sec. 13232(a)(1) and (2), 107 Stat. 501 (the 1993 legislation). The legislative history indicates that the purpose of this 1993 amendment was to conform the operating rules for section 956 to the operating rules in new section 956A, enacted by the same legislation. Subject to certain qualifications, section 956A required U.S. shareholders to include in income a pro rata share of a CFC's earnings invested in "excess passive assets", defined generally as assets that the CFC holds for the production of passive income. See H. Rept. 103–111, at 691–695 (1993), 1993–3 C.B. 167, 267–271. The legislative history indicates that the purpose of section 956A was to curb CFCs' deferrals of U.S. taxation.[6] The 1993 legislation conformed the section 956(a) operating rules to section 956A because the provisions are "in some ways, conceptually parallel". *Id.* at 692, 1993–3 C.B. at 268. There is no mention in the 1993 legislative history of any dividend equivalency rationale with

---

*Gulf Oil* as establishing any rule for determining the issue before us.

[6] The stated reason for enacting sec. 956A was to "impose on controlled foreign corporations a new type of limitation on accumulating deferred earnings" because "deferral of U.S. tax on accumulated active business profits is not necessary to maintain the competitiveness of business activities conducted by controlled foreign corporations where such accumulated profits are held in the form of excessive accumulations of passive assets." H. Rept. 103–111, at 691–692 (1993), 1993–3 C.B. 167, 267–268.

respect to either amended section 956(a) or new section 956A.[7]

Further evidencing the distinction between dividends and section 951 inclusions, the Code subjects them to different operating rules. For instance, whereas dividend distributions reduce the earnings and profits of the distributing corporation, see sec. 316(a), section 951 inclusions do not—the undistributed earnings remain with the CFC, see sec. 956(a)(2), (b)(1); sec. 1.952–1(c)(1), Income Tax Regs.[8] As another example, whereas a dividend results in no increase to the shareholder's stock basis, a section 951 inclusion does.[9] Sec. 961(a); sec. 1.961–1, Income Tax Regs.

In the light of these various considerations, the sentence in question from the 1962 legislative history does not control the issue of whether section 951 inclusions should be characterized as dividends for purposes of section 1(h)(11). The Code gives no hint that a section 951 inclusion, which as we have seen does not represent a "distribution", should be treated as a "dividend" within the meaning of section 1(h)(11).

According to its legislative history, section 1(h)(11) was intended in part to remove a perceived disincentive for corporations to pay out earnings as dividends instead of retaining and reinvesting them.[10] Because income inclusions under section 951(a)(1)(B) represent earnings that CFCs have retained and reinvested in U.S. property instead of paying them out as dividends, characterizing these amounts as

---

[7] Sec. 956A was repealed in 1996, leaving intact the revised structure and operating rules of sec. 956(a) as in effect for the years at issue.

[8] When the CFC eventually distributes the amounts previously included in the U.S. shareholder's gross income pursuant to sec. 951, the distribution then reduces the CFC's earnings and profits. See sec. 959(d). To avoid double taxation to the shareholder, the actual distribution is excluded from the shareholder's gross income. See sec. 959(a).

[9] This increase in the U.S. shareholder's stock basis is counteracted if and when the CFC eventually distributes to the shareholder the amounts represented by the sec. 951 inclusions. See sec. 961(b)(1); sec. 1.961–2, Income Tax Regs.

[10] The legislative history states in part:

In addition, the Committee finds that present law, by taxing dividend income at a higher rate than income from capital gains, encourages corporations to retain earnings rather than to distribute them as taxable dividends. If dividends are discouraged, shareholders may prefer that corporate management retain and reinvest earnings rather than pay out dividends, even if the shareholder might have an alternative use for the funds that could offer a higher rate of return than that earned on the retained earnings. This is another source of inefficiency as the opportunity to earn higher pre-tax returns is bypassed in favor of lower pre-tax returns. [H. Rept. 108–94, at 31 (2003), 2003–3 C.B. 35, 65.]

qualified dividend income would not appear to further the stated legislative purpose.

Further evidencing an absence of legislative purpose to treat section 951 inclusions as qualified dividend income, certain technical rules of section 1(h)(11) are a poor fit for section 951 inclusions. For instance, section 1(h)(11)(B)(iii), in coordination with section 246(c), imposes upon the taxpayer a holding period requirement with respect to the stock on which dividends are paid. This holding period is based on the shareholder's ex-dividend date. See sec. 246(c)(1). Because a section 951 inclusion implicates no declaration or payment of a dividend, there is no ex-dividend date by which to measure the holding period.

As enacted in 2003, section 1(h)(11)(C) expressly excluded from the definition of "qualified foreign corporation" foreign personal holding companies (as defined in former section 552(a)) (FPHCs), foreign investment companies (as defined in former section 1246(b)) (FICs), and passive foreign investment companies (as defined in section 1297(a)) (PFICs). [11] Petitioners suggest that because section 1(h)(11) does not similarly exclude section 951 inclusions, it must treat them as qualified dividend income. This reasoning is fallacious. That the statute excludes certain types of corporations (not including Editora) from the definition of qualified foreign corporation has little bearing on the question of whether section 951 inclusions relating to a corporation (such as Editora) that *is* a qualified foreign corporation should be characterized as qualified dividend income.

In Notice 2004–70, 2004–2 C.B. 724, 726, the Internal Revenue Service (IRS) provided guidance that section 951 inclusions do not constitute qualified dividend income under section 1(h)(11). [12] For the reasons previously discussed, we agree with this conclusion.

Petitioners argue that section 951 inclusions should be treated as dividends because the 2004 instructions to Form 5471, Information Return of U.S. Persons With Respect To

---

[11] Secs. 552 and 1246 were repealed as part of AJCA 2004 sec. 413(a). When Congress repealed the FPHC regime in 2004, it also amended sec. 1(h)(11)(C)(iii) by eliminating the reference to FPHCs and FICs. See AJCA 2004 sec. 413(c)(1)(B), 118 Stat. 1507.

[12] In its postenactment general explanation of sec. 1(h)(11), the Joint Committee on Taxation cited Notice 2004–70, 2004–2 C.B. 724, with apparent approval. Staff of the Joint Comm. on Taxation, General Explanation of Tax Legislation Enacted in the 108th Congress, at 25 n.44 (J. Comm. Print 2005).

Certain Foreign Corporations, indicate that individual CFC shareholders should report section 951 inclusions as ordinary dividend income. On brief respondent acknowledges that the 2004 instructions are "ambiguous", pointing out that the 2004 instructions also instruct corporate taxpayers to report section 951 inclusions not as dividends but as "other income". [13] But whatever ambiguity or inaccuracy might be found in the 2004 instructions, it cannot affect the operation of the tax statutes or petitioners' obligations thereunder. See *Weiss v. Commissioner*, 129 T.C. 175, 177 (2007). "It is settled law that taxpayers cannot rely on Internal Revenue Service instructions to justify a reporting position otherwise inconsistent with controlling statutory provisions." *Montgomery v. Commissioner*, 127 T.C. 43, 65 (2006); see *Johnson v. Commissioner*, 620 F.2d 153, 155 (7th Cir. 1980), affg. T.C. Memo. 1978–426. Moreover, as respondent notes, the IRS provided detailed guidance about this issue in Notice 2004–70, *supra*, published about a year before petitioners filed their amended 2003 and original 2004 returns.

We conclude and hold that petitioners are not entitled to treat their section 951 inclusions as qualified dividend income under section 1(h)(11)(B).

*Decision will be entered for respondent.*

---

[13] Respondent asserts that when the 2004 instructions were drafted, before passage of the Jobs and Growth Tax Relief Reconciliation Act of 2003, Pub. L. 108–27, sec. 302, 117 Stat. 760, the distinction between dividend income and other ordinary income was of little import, all of it being taxed at the same rate.