**MORROW v. SCOFIELD, Internal Revenue Collector.**

No. 9572.

Circuit Court of Appeals, Fifth Circuit.

Dec. 12, 1940.

Rehearing Denied Feb. 1, 1941.

Harry C. Weeks, of Fort Worth, Tex., for appellant.

Carl J. Marold and George H. Zeutzius, Sp. Assts. to the Atty. Gen., and W. R. Smith, Jr., U. S. Atty., and Henry W. Moursund, Asst. U. S. Atty., both of San Antonio, Tex., for appellee.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was for refund of documentary stamp taxes affixed by the taxpayer to instruments by which the taxpayer had assigned [1] certain oil and gas lease holds on

---

[1] These assignments purported to: "* * * sell, transfer, assign, set over, grant and convey unto said Stanolind Oil & Gas Company, its successors and assigns, all of the oil and gas lease acreage described in the schedule which is attached hereto, made a part hereof and marked for identification as Schedule 'A', together with all wells, casing in wells, derricks, machinery, tanks, pipe lines, houses and any and all other structures, machinery, equipment and personal prop-

lands in Texas. They were affixed over taxpayer's protest, upon the insistence that their affixing was required by Section 800, and Schedule A-8,[2] of the Revenue Act of 1926, as amended, which imposes a tax with respect to any "deed, instrument, or writing * * * whereby any lands, tenements, or other realty sold shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, the purchaser or purchasers * * *."

The district judge thought the affixing was required and gave judgment for defendant. The taxpayer, still ·protesting, has appealed, assailing the judgment as erroneous on two grounds. One, that the instruments were not "deeds, instruments or writings whereby any lands, tenements, or other realty was granted, assigned, transferred or otherwise conveyed to or vested in the purchaser" so as to be subject to the stamp tax imposed by the statutes in question. Two, that if the treasury regulation 84, "what constitutes lands, tenements or other realty is determinable by the laws of the state in which the property is situated", is a correct construction of the section and schedule in question, so that, as is the case here, the same instrument is held to be taxable as to Texas leases and non-taxable as to Louisiana leases transferred by it, said section and schedule are

---

erty located on the leases described in said Schedule 'A'." These leases though ordinary commercial oil and gas leases by which the lessor, for cash and in consideration of the royalties and other agreements contained in the instrument; " * * * grants, leases and lets exclusively unto lessee for the purpose of investigating, exploring, prospecting, drilling and mining for and producing oil, gas and all other minerals, laying pipe lines, building tanks, power stations, telephone lines and other structures thereon to produce, save, take care of, treat, transport and own said products, and housing its employees,"; and there was a general instrument which declared the grantor " * * * does hereby transfer, set over, assign and convey unto Stanolind all right, title, and interest, powers, privileges, or benefits of Morrow of any nature whatever in and to any and all property and assets, whether real, personal or mixed, · acquired by Morrow by general conveyance dated July 31, 1935, from Yount-Lee Oil Company, to which reference is hereby made."

2 Schedule A-8 of Title VIII, Revenue Act of 1926, as amended by Section 725 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 297:

"8. Conveyances: Deed, instrument,· or writing, delivered on or after the 15th day after the date of the enactment of the Revenue Act of 1932 and before July 1, 1934 (unless deposited in escrow before April 1, 1932), whereby any lands, tenements, or other realty sold shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, the purchaser or purchasers, or any other person or persons, by his, her, or their direction, when the consideration or value of the interest or property conveyed, exclusive of the value of any lien or encumbrance remaining thereon at the time of sale, exceeds $100 and does not exceed $500, 50 cents; and for each additional $500 or fractional part- thereof, 50 cents. This subdivision shall not apply to any instrument or writing given to secure a debt."

Treasury Regulations 71 (1932 Edition: promulgated to enforce above.)

Art. 75. Who shall affix stamps.—The Act requires that the person who makes, signs, or issues any instrument taxable thereunder shall affix and cancel the revenue stamps. It also prohibits any person from accepting such instruments unless they are properly stamped.

Art. 76. Actual value at time of conveyance ·the measure of the tax.—Where the consideration for a conveyance of lands, tenements, or other real property is left open, to be fixed by future contingencies, the actual value at the time of conveyance is the measure of the tax upon the deed, instrument, or writing whereby the conveyance is made.

Art. 77. Tax, how computed.—In calculating the amount of stamps which must be affixed to a deed of conveyance, the tax is computed upon the full consideration for the transfer less all encumbrances which rest on the property before the sale and are not removed by the sale. Encumbrances placed on the property in connection with and as a result of the sale or transfer, as well as notes for deferred payments, cannot be deducted in determining the amount upon which tax is calculated.

Art. 84. What constitutes real property determinable by law of State where located.—(a) What constitutes "lands, tenements, or other realty" is determinable by the law of the State in which the property is situated. Standing timber is ordinarily held to be real estate, and where so held the deed transferring it is subject to the tax.

invalid and unconstitutional as levying an excise tax which is not geographically uniform, but varies with each state.

We cannot agree with appellant. The Texas decisions aside, and they are uniform to the effect that mineral leasehold interests are interests in lands, tenements or other realty, we think the comprehensive language of the federal statute makes it quite plain that it was the intention of Congress to require the affixing of stamps to instruments of this kind, instruments which in substance convey interests in lands, tenements or other realty without regard to the particular legal effects and consequences which may be attached to them by the laws of a particular state.

The treasury regulation, "what constitutes lands, tenements, or other realty is determinable by the laws of the state in which the property is situated" is not a part of the statute [3] but a mere rule of thumb provision for working its application out. It was not intended to, it may not be given effect where the laws of a state do violence to the purport and intent of the taxing statute. If state laws should abolish entirely the concept of lands, tenements or other realty, or declare that a conveyance of land was not a conveyance, it would not, I suppose, be contended that the statute could be nullified in those states, and the treasury regulation if read as so providing, would be a nullity. All that it amounts to is that where there may be a reasonable difference of opinion as to the legal effect of an instrument, the law of the state where the property is situated, will be looked to as controlling.

Both then, because it is not a part of the statute and because if treated as though it were, it must be given a reasonable construction, it is quite plain that Article 84 of Treasury Regulation 71, does not operate at all to impair or invalidate the statute.

Turning then to the statute itself and construing it in the light of its clearly manifested purpose, to require the affixing of stamps, to instruments which in substance transfer interests in realty, we think it quite clear that the affixing of stamps was required here. For, judging by their terms and their effect, particularly in the light of their reasonable construction in Texas, the instruments in question are undeniably transfers of interest in realty requiring stamps. Indeed, it would be a flying in the face at once of the statute imposing stamp taxes and of the law of Texas to hold otherwise.

Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199, on which appellant relies does not support him but is quite to the contrary effect. For, it makes clear that federal taxing statutes must be construed and given effect in the light of the taxing purpose they evidence and they will not be wrested out of the ordinary meaning their words convey, to conform them to particular state legal concepts. There the court, declaring that a mineral lease with payment of a bonus was not a sale within the capital gains statute; that the bonus was merely an advance payment of royalty and subject to depletion allowance as royalty payments are; and pointing out that the capital gains statute was designed to overcome the evil of paying taxes in a lump in one year on gains accumulated over many years from the sale outright of assets in that year, held that it would be a perversion of the statute to construe it as applicable to a mineral lease, since returns come from it annually and not in a lump, and depletion is allowed on account of these returns, including the bonus.

What was there said about state laws not being controlling upon the incidence of federal taxes was most appropriately said. The same thing was in effect said in Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489. There, a lessee of oil lands had transferred them to another with a stipulation for an overriding royalty or bonus and it was held that he had retained an economic interest which was depletable, without regard to the precise legal effect attributed under the state law to the instrument by which the transfer was effected.

We may well agree with appellant that there is no substantial or real difference between leases in Texas where title to the oil is held to pass by the conveyance, and leases in Louisiana where title to the oil and gas passes only upon severance by the lessee. But this would not help appellant here. It would show only that he should

---

[3] In the Constantine case, Constantine v. United States, 5 Cir., 75 F.2d 928, at page 930, the Act in terms provided for ambulatory application in accordance with state laws.

be taxed upon the transfers in Louisiana as well as in Texas. What the Supreme Court said in Burnet v. Harmel, supra [287 U.S. 103, 53 S.Ct. 77],[4] is quite apposite here. But, we think it makes against not for appellant. For, whether the courts of a particular state define the interest acquired under a mineral lease as a right in the land to take the oil out of it or as an interest in the oil in place as a part of the land, in both instances, the effect as to the stamp tax statute in question should be the same. In Louisiana the right obtained is called a servitude upon or in, in Texas, a title to the land. But, in both cases, for all practical purposes, there has been a transfer of an interest in realty within the meaning of the stamp tax. But, if we are mistaken in this, it is quite plain with the law of Texas as it is, that these instruments require stamps. For if we concede that in different jurisdictions different views as to the legal effect of mineral leases may be reasonably entertained, it is quite plain we think, that the holding of the Texas courts that a mineral lease is a conveyance of an interest in land is not unreasonable but quite reasonable and that the affixing of stamps thereon is required.

Affirmed.

---

[4] "The state law creates legal interests, but the federal statute determines when and how they shall be taxed. We examine the Texas law only for the purpose of ascertaining whether the leases conform to the standard which the taxing statute prescribes for giving the favored treatment to capital gains. Thus tested, we find in the Texas leases no differences from those leases where the title to the oil and gas passes only on severance by the lessee, which are of sufficient consequence to call for any different application of section 208 [26 U.S.C.A.Int.Rev. Acts, page 13]. The fact that title to the oil and gas is said to pass before severance rather than after, is not such a difference. The economic consequences to the lessor of the two types of lease are the same."