**PHILLIPS PETROLEUM CO. v. JONES.**

No. 3878.

United States Court of Appeals
Tenth Circuit.

Aug. 2, 1949.

Rehearing Denied Oct. 12, 1949.

Rayburn L. Foster, Bartlesville, Okl. (Don Emery, R. B. F. Hummer, Hilary D. Mahin, Bartlesville, Okl., Rufus Y. Bandy, Jr., and Harry D. Turner, Oklahoma City, Okl., on the brief), for appellant.

Lester L. Gibson, Washington, D. C. (Theron Lamar Caudle, Assistant Attorney General, Ellis N. Slack and F. A. Michels,

Special Assistants to the Attorney General, and Robert E. Shelton, United States Attorney, Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The sole question here is whether the conventional "thereafter" and "unless" Oklahoma oil and gas lease is within the incidence of Sections 3480 and 3482, Title 26 U.S.C.A., which, together impose a documentary stamp tax upon a "deed, instrument, or writing * * * whereby any lands, tenements, or other realty sold shall be granted, assigned, transferred or otherwise conveyed * * *."

During the years 1942, 1943, 1944 and 1945, inclusive, the Phillips Petroleum Company purchased oil and gas leases in Oklahoma, which by their terms granted and leased exclusively unto Phillips described land "for the purpose of investigating, exploring, prospecting, drilling, and mining for and producing oil, gas and all other minerals * * *" for a stipulated primary term (usually five years), "and as long thereafter as oil, gas or other mineral is produced from said land hereunder". The leases also generally provided that the lease would terminate at the end of one year, unless a well was commenced thereon and drilled with due diligence, or in lieu thereof annual stipulated rentals paid for the primary term of the lease.

On the premise that these leases sold and conveyed "lands, tenements, or other realty", the Commissioner assessed the stamp tax, which Phillips paid in an agreed amount under protest, and brought this suit against the Collector to recover. It was alleged and contended that since, under controlling Oklahoma, Kansas, or federal law, an oil and gas lease is not realty, but a mere right or privilege to go upon the land to explore, produce and convert the oil to the lessee's possession as personal property, the execution of a lease, or an assignment thereof, on lands in Oklahoma and Kansas does not constitute a sale of "lands, tenements, or other realty" within the meaning

and purposes of the taxing act. Phillips has appealed from a judgment in favor of the Collector.

The taxing act was originally enacted in 1917, and re-enacted in almost identical language by each succeeding Congress until 1926. It was again re-enacted in 1932, and all subsequent Congresses, until 1941, when it was made a permanent tax. See 55 Stat. 706, Sec. 505. From 1920 until 1926, and from 1932 until 1941, applicable treasury regulations (Reg. 71, art. 84) provided that "(a) What constitutes 'lands, tenements, or other realty' is determinable by the law of the state in which the property is situated * * *". Pursuant to this interpretation of the statute, and applying the law of Oklahoma and Kansas, the Treasury ruled at various times during this period that oil and gas leases, and assignments thereof, were not subject to the stamp tax in Oklahoma and Kansas.

Beginning in 1941, however, the applicable Treasury regulations omitted any definition of the critical phrase "lands, tenements or other realty", and on August 31, 1942, by General Counsel Memorandum No. 23295, the Bureau of Internal Revenue repudiated Article 84 of Regulations 71, by ruling that what constitutes "lands, tenements, and other realty" for purposes of the stamp tax liability was not controlled by state law, and paraphrasing Mr. Justice Stone in Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed 199, ruled that henceforth reference would be made to state law to determine the character of the rights conveyed, but whether conveyances of such rights were taxable would be determined under federal law. The Memorandum went on to state that for the purposes of determining liability for stamp tax, the phrase "lands, tenements, or other realty embraces those interests which endure for a period of time, the termination of which is not fixed or ascertained by a specific number of years, such as an estate in fee simple, life estate, perpetual easement, etc., and those interests enduring for a period of years but which either by reason of the length of the term or the grant of a right to extend the term by renewal or otherwise, convey a bundle of rights approximating those of the class

of interest first above mentioned. Thus, for example, a lease of real estate for 999 years, or a lease for 99 years renewable forever or for several succeeding terms is taxable. On the other hand, a lease for five years is not taxable even if the right is granted to renew it for several successive terms." This rule was expressly made prospectively applicable in determining liability under the taxing statute, and it was under this authority that the Commissioner imposed the taxes involved here.

On appeal, Phillips first invokes the so-called "reenactment rule", contending that under well settled principles applicable to revenue acts, the repeated and consistent reenactment of the taxing statute as administratively interpreted froze the administrative interpretation into the act, and the Commissioner is without authority to give it another and different meaning upon which taxability depends, without Congressional sanction, citing United States v. Cerecedo Hermanos Y. Compania, 209 U.S. 337, 28 S.Ct. 532, 52 L.Ed. 821; Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536; McFeely v. Commissioner, 296 U.S. 102, 56 S.Ct. 54, 80 L.Ed. 83, 101 A.L.R. 304. The taxpayer adopts the argument of the Commissioner in Morrow v. Scofield, 5 Cir., 116 F.2d 17, to the effect that state law does control taxability, and that undoubtedly under the law of Oklahoma and Kansas, an oil and gas lease cannot be classified or legally characterized as realty or an interest therein.

■ Indisputably, Oklahoma and Kansas, without deviation have held that an oil and gas lease is a chattel real, a profit a prendre, or an incorporeal hereditament, which grants only the exclusive right, subject to legislative control, to explore by drilling operations; to reduce to possession, and thus acquire title to the oil and gas, which is personalty. See cases cited in Continental Supply Co. v. Marshall, 10 Cir., 152 F.2d 300. For Kansas decisions, see Connell v. Kanwa Oil, Inc., 161 Kan. 649, 170 P.2d 631; Wilson v. Holm, 164 Kan. 229, 188 P. 2d 899. In Oklahoma, it is said that while an oil and gas lease creates an estate in

realty, that interest or estate is not "real estate" within the meaning of the Oklahoma statute relating to the "sale of realty". Duff v. Keaton, 33 Okl. 92, 124 P. 291, 42 L.R.A.,N.S., 472; see also State v. Shamblin, 185 Okl. 126, 90 P.2d 1053.

■ But tax statutes and tax regulations have never been static. "Experience, changing needs, changing philosophies inevitably produce constant change in each." Helvering v. Wilshire Oil Co., 308 U.S. 90, 60 S.Ct. 18, 23, 84 L.Ed. 101. In that case, the Supreme Court confined the reenactment rule to "the situation where the validity of administrative action standing by itself may be dubious or where ambiguities in a statute or rules are resolved by reference to administrative practice prior to reenactment of a statute; and where it does not appear that the rule or practice has been changed by the administrative agency through exercise of its continuing rulemaking power." 308 U.S. at page 100, 60 S.Ct. at page 24. It is said that where the administrative agency is possessed of a continuing rule-making power, as is the Commissioner of Internal Revenue, the court should not hamstring it by prohibiting future changes in rules, prospective in character, simply because the doctrine of administrative construction receives legislative approval by a statutory provision without material change. Id. See also White v. Winchester Country Club, 315 U.S. 32, 62 S.Ct. 425, 86 L.Ed. 619; Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263; Continental Oil Co. v. Jones, 10 Cir., 1949, 176 F.2d 519.

■ The Wilshire case has been roundly criticized in Vol. XL, Columbia Law Review, February 1940, p. 252, the argument being that there is or should be a distinction between interpretive and legislative regulations. It is suggested, with good reason, that the delegated power to promulgate legislative regulations necessarily contemplates the power to change them without Congressional approval, so long as they do not distort the broad legislative purpose. But the power to amend or change interpretive regulations, having the effect of changing the Congressional meaning after re-

.enactment, is in effect a repudiation of the Congressional intent. Suffice it to say that the Wilshire case makes no such distinction; and we are bound by the decision, not the criticism.

■ Courts have emphasized the desirability of uniformity in the nation-wide scheme of taxation, and have accordingly made state law applicable only "when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law." Burnet v. Harmel, supra. Thus, when the Fifth Circuit had before it the applicability of this taxing act to a Texas oil and gas lease (under the law of which state the execution of a lease conveyed a present interest in the land covered thereby), the court said that the comprehensive language of the federal statute made manifest the intention of Congress to require the affixing of stamps to instruments of this kind, without regard to the particular legal effects and consequences which might be attached to them by laws of a particular state. Morrow v. Scofield, supra. The challenged G. C. Memorandum was undoubtedly influenced by the holding and the philosophy of the Harmel and Scofield cases, and was intended to bring the treasury ruling in harmony with the pronouncement in those cases.

Conceding arguendo that local law is not decisive, it is suggested that Oklahoma and Kansas law is taken from the earlier federal decisions, i. e. Ohio Oil Co. v. Indiana, 177 U.S. 190, 20 S.Ct. 576, 44 L.Ed. 729; Rich v. Doheghey, 71 Okl. 204, 177 P. 86, 3 A.L.R. 352; Alexander v. King, 10 Cir., 46 F.2d 235, 238, 74 A.L.R. 174, consequently the lease in question, when judged by federal law, cannot be construed as realty within the meaning of the taxing act. In that same connection, it is earnestly contended that the ruling of the Commissioner and the judgment of the trial court flies in the face of the philosophy of Burnet v. Harmel, supra, Alexander v. King, supra, and other cases holding that the initial bonuses for an oil and gas lease or the proceeds of the production therefrom, is not capital gain within the meaning of Section 208(a) (1) of the Revenue Act of 1924, 43 Stat. 262, 26 U.S.C.A. Int.Rev. Acts, page 13, defining capital gain as the "sale or exchange of capital assets." See Annot. 125 A.L.R. 773. The Harmel case involved lease bonuses and the proceeds of the production of oil from a Texas oil and gas lease. The taxpayer took the position that since, under Texas law, an oil and gas lease passed title to the oil and gas in place as realty, the lease bonuses and income from the production of the lease represented capital gains and not ordinary income. The court held that irrespective of any local characterization of the payments, production of oil under the lease was only an incident to the use of the land it conveyed, and could not be viewed as a sale or conversion of capital assets. By analogy, it is argued that if the production from a lease cannot be viewed as a capital gain, the sale of the lease certainly should not be held to be a sale of realty within the meaning of the documentary stamp tax. And this is especially true where it is shown that less than one percent of the oil and gas leases taken in Oklahoma and Kansas are extended beyond their primary term by operation of the "thereafter" or "unless" provisions of the lease. But the influence of the Harmel and King cases is greatly diminished, if not wholly nullified, when it is considered that regardless of local characterizations, the outright sale of an oil and gas lease, when held for the statutory period, constitutes a conversion of capital assets. See Anderson v. Helvering, 310 U.S. 404, 408, 60 S.Ct. 952, 84 L.Ed. 1277; McLean v. Commissioner, 5 Cir., 120 F.2d 942; Commissioner of Internal Revenue v. Fleming, 5 Cir., 82 F.2d 324; Anderson v. Commissioner, 5 Cir., 81 F.2d 457, 104 A.L.R. 676; Mertens Law of Income Tax, Sections 22.-24, 24.24, 24.25 and 24.26.

■ It may be conceded that when judged by the laws of the states of Oklahoma and Kansas, or the general federal law, an oil and gas lease is not realty or an estate therein. But even so, we are concerned only with the meaning and application of a federal excise tax, imposed by Congress in the exercise of its plenary power under

the Constitution. It is the will of Congress which controls, and in the absence of express language to the contrary, the Act is to be interpreted to give uniform application to a nation-wide scheme of taxation. The critical language in the act is undoubtedly taken from state rules of property, having their genesis in English feudal law. Its technical definition belongs to antiquity, but it takes its color and content from modern business practices and the legal relationships they create. Cf. Jones v. Magruder, D.C., 42 F.Supp. 193. Thus, while clinging to the technical common law definitions, the Oklahoma courts have nevertheless held that an oil and gas lease is within the statute of frauds applicable to real estate; its conveyance by a corporation is required to be attested by its secretary in accordance with a statute relating to real estate; it is a conveyance within the homestead laws of the state; and it is a grant of real property within the meaning of the Oklahoma statute relating to breaches of covenants in a grant of an estate of real property. It has been held that an exception in a deed of conveyance reserving unto the grantor the oil and gas, is a reservation of an interest in land; it is a proper subject of an equitable proceedings to quiet title; the pledge of unaccrued royalty as security by the lessor of an oil and gas lease is a pledge of an interest in real estate; and, a mortgage upon land is a mortgage upon the oil and gas in place as an incident to the land itself. An assignment of an oil and gas lease requires all of the formalities of all other conveyances of real estate; it must be recorded as an instrument relating to real estate to impart notice; and, a mortgage of an oil and gas lease must be recorded as a real estate mortgage. See Continental Supply Co. v. Marshall, 10 Cir., 152 F.2d 300, and cases collected there.

If an Oklahoma oil and gas lease is realty or an interest therein for all of the foregoing practical purposes, we do not think that it is a perversion of its true character to say that it is realty for documentary stamp tax purposes. The judgment is affirmed.