152 T.C. No. 2

UNITED STATES TAX COURT

EATON CORPORATION AND SUBSIDIARIES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 28040-14.                    Filed February 25, 2019.

This case is before us on cross-motions for partial summary
judgment. The issue is whether the earnings and profits (E&P) of the
upper tier controlled foreign corporation (CFC) partners of Eaton
Worldwide LLC (EW LLC), a domestic partnership, must be
increased as a result of the partnership's I.R.C. sec. 951(a) income
inclusions.

P contends that EW LLC's I.R.C. sec. 951(a) inclusions do not
affect the E&P of its upper tier CFC partners. Conversely, R
contends that the upper tier CFC partners increase their E&P to
reflect EW LLC's I.R.C. sec. 951(a) inclusions.

Held: The E&P of upper tier CFC partners of a domestic
partnership, such as EW LLC, must be increased as a result of the
partnership's I.R.C. sec. 951(a) income inclusions.

Joel V. Williamson, Charles P. Hurley, John T. Hildy, Brian W. Kittle, Geoffrey M. Collins, Christine S. Hooks, Rajiv Madan, Royce L. Tidwell, Christopher P. Murphy, Nathan P. Wacker, Kevin R. Stults, and Christopher P. Bowers, for petitioner.

John M. Altman, Ronald S. Collins, Jr., Eric P. Ingala, and Laurie A. Nasky, for respondent.

OPINION

KERRIGAN, Judge:  The Internal Revenue Service (respondent) determined deficiencies in Federal income tax and penalties for the 2007-10 calendar taxable years (years in issue) of Eaton Corp. (Eaton or petitioner).  This case is before the Court on the parties' cross-motions for partial summary judgment.  Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Generally speaking, a controlled foreign corporation (CFC) that is a partner in a domestic partnership must include in gross income its distributive share of that partnership's gross income, including income that the partnership included

under section 951(a) with respect to any lower tier CFCs. According to respondent the upper tier CFC partners must also increase their earnings and profits (E&P) by such an amount. Adopting that approach, respondent contends that the correct amounts to be included in petitioner's gross income under sections 951 and 956 are $73,030,810 and $114,065,635 for tax years 2007 and 2008, respectively.[1]

Petitioner, by contrast, contends that a domestic partnership's section 951(a) inclusions do not affect the E&P of its upper tier CFC partners. The primary issue we must decide is whether the E&P of the upper tier CFC partners of Eaton Worldwide LLC (EW LLC), a domestic partnership, must be increased as a result of the partnership's section 951(a) income inclusions.

## Background

Some of the facts are stipulated and are so found. Eaton was a domestic corporation with its principal place of business in Cleveland, Ohio, when it timely filed its petition.

---

[1]The parties have stipulated the amounts of the adjustments if the Court upholds respondent's position.

I.     Corporate Structure

During the years in issue Eaton was the parent of an affiliated group of corporations (Eaton Group) that filed consolidated Federal income tax returns. Members of the Eaton Group were 100% shareholders of foreign corporations that were CFCs within the meaning of section 957.  These CFCs collectively held (directly or indirectly) 100% of the membership interests in EW LLC.  The CFCs that held membership interests in EW LLC during the years in issue were: (1) Eaton Holding III S.a.r.l., (2) Eaton Finance N.V., and (3) Eaton B.V. (collectively, upper tier CFC partners).  Any adjustments to income under section 951(a) for the upper tier CFC partners would be made to the consolidated income of the Eaton Group.

During the years in issue EW LLC owned equity interests in, and was the sole U.S. shareholder of, several CFCs within the meaning of section 957(a) (lower tier CFCs).  EW LLC included in income under section 951(a) the subpart F income earned by the lower tier CFCs and amounts calculated under section 956 with respect to the lower tier CFCs.  Because the upper tier CFC partners were not U.S. persons under section 957(c), they were not U.S. shareholders of the lower tier CFCs.

The lower tier CFCs did not make any distributions of property to EW LLC during 2007 and 2008. On March 16, 2007, EW LLC purchased all the issued and outstanding common stock of AT Holdings Corp. (AT Holdings) from a third party for $387,743,528. AT Holdings was a Delaware corporation, and its sole asset was the stock of Argo-Tech Corp., also a Delaware corporation. EW LLC thereafter owned 100% of the issued and outstanding common stock of AT Holdings or its successor, Eaton Industrial Corp. For the purposes of applying sections 951(a)(1)(B) and 956, EW LLC's interest in AT Holdings constituted U.S. property, which was treated as held by the upper tier CFC partners. Each upper tier CFC partner was thus treated as holding an interest in U.S. property by virtue of EW LLC's ownership of AT Holdings.[2]

## II. Tax and Financial Reporting

During the years in issue EW LLC, as the sole U.S. shareholder of the lower tier CFCs, was required under section 951(a) to include in gross income its pro rata share of the subpart F income generated by the lower tier CFCs and section 956 amounts with respect to the lower tier CFCs. The lower tier CFCs treated the

---

[2]The parties do not dispute that, to the extent the upper tier CFC partners have applicable earnings, the U.S. shareholders of the upper tier CFC partners must include in income sec. 956 amounts based on the upper tier CFC partners' holdings of AT Holdings stock.

amounts thus included by EW LLC as previously taxed E&P under section 959(c). EW LLC timely filed Forms 1065, U.S. Return of Partnership Income, for the years in issue on which it reported income inclusions under section 951(a) with respect to the lower tier CFCs.

During the years in issue EW LLC issued Schedules K-1, Partner's Share of Income, Deductions, Credits, etc., to the upper tier CFC partners reflecting their distributive shares of its income inclusions under section 951(a). These distributive shares have since been adjusted slightly following an analysis of EW LLC's capital accounts. The upper tier CFC partners excluded these amounts from gross income and from the calculation of their subpart F income.

None of the upper tier CFC partners made any adjustments to their E&P corresponding to their distributive shares of EW LLC's income inclusions under section 951(a). For all other items of income, gain, loss, deduction, or credit reflected on the Schedules K-1, the upper tier CFC partners did make adjustments to their respective E&P. The upper tier CFC partners likewise made no adjustments to their respective bases in their partnership interests in EW LLC corresponding to their distributive shares of EW LLC's income inclusions under section 951(a). For all other items of income, gain, loss, deduction, or credit

reflected on the Schedules K-1, the upper tier CFC partners did make adjustments to their respective bases in their partnership interests.

The consolidated financial position of Eaton Group and the consolidated results of its operations and cashflows were reported in conformity with U.S. generally accepted accounting principles (GAAP) for the years in issue. For financial reporting purposes (but not for Federal income tax purposes) Eaton's consolidated financial statements included the results and cashflows of the upper tier CFC partners, EW LLC, and the lower tier CFCs. Each of the upper tier CFC partners prepared its unconsolidated financial statements and accounting records in conformity with U.S. GAAP.

## Discussion

I.    Summary Judgment Standard

Summary judgment may be granted where the pleadings and other materials show that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). The burden is on the moving party to demonstrate that there is no genuine dispute as to any material fact and that he or she is entitled to judgment as a matter of law. FPL Grp., Inc. & Subs. v. Commissioner, 116 T.C. 73, 74-75 (2001). Both parties

have moved for partial summary judgment, and they agree that there exist no genuine disputes of material fact regarding the question they have asked us to decide. After reviewing the pleadings and the stipulation of facts and attached exhibits, we conclude that a decision may be rendered as a matter of law.

II.     Background Law

Subpart F was enacted in response to perceived abuses by U.S. taxpayers through the use of CFCs. See Dougherty v. Commissioner, 60 T.C. 917, 928 (1973) ("In subpart F, Congress has singled out a particular class of taxpayers, U.S. shareholders, whose degree of control over their foreign corporation allows them to treat the corporation's undistributed earnings as they see fit." (Fn. ref. omitted.)). The goal of subpart F is to tax currently specified earnings of CFCs that are, in the aggregate, controlled by U.S. shareholders. Textron, Inc. v. Commissioner, 117 T.C. 67, 73-74 (2001).

In the ordinary course foreign source income earned by a CFC is not subject to U.S. taxation until it is repatriated in the form of a dividend or other distribution to the CFC's U.S. shareholders. Secs. 881 and 882; Dave Fischbein Mfg. Co. v. Commissioner, 59 T.C. 338, 353 (1972); see also S. Rept. No. 87-1881, at 78 (1962), 1962-3 C.B. 703, 784. However, under section 951(a), a U.S. shareholder must include in gross income for the current taxable year its pro rata share of

certain items attributable to the CFC, regardless of whether any distribution was made.

Sections 951(a)(1)(B) and 956 were intended "to prevent the repatriation of income to the United States in a manner which does not subject it to U.S. taxation."  H.R. Rept. No. 87-1447, at 58 (1962), 1962-3 C.B. 405, 462.  The Senate Finance Committee report noted that "[g]enerally, earnings brought back to the United States are taxed to the shareholders on the grounds that this is substantially the equivalent of a dividend being paid to them."  S. Rept. No. 87-1881, supra at 88, 1962-3 C.B. at 794.

A CFC is a foreign corporation whose stock is more than 50% (in terms of voting power or value) owned (directly, indirectly, or constructively) by U.S. shareholders on any day during the corporation's taxable year.  Sec. 957(a).  A U.S. shareholder is a U.S. person who owns (directly, indirectly, or constructively) 10% or more of the total combined voting power of the foreign corporation's stock.  Sec. 951(b).  All of petitioner's foreign subsidiaries are CFCs, and petitioner is a U.S. shareholder under section 951(b).

Section 951(a) requires that a U.S. shareholder owning CFC stock on the last day of the CFC's taxable year include in gross income for the current taxable year its pro rata share of certain items attributable to the CFC, regardless of

whether any distribution was actually made. Generally, this includes both its

"subpart F income" and "the amount determined under section 956". See sec.

951(a)(1). The amount determined under section 956

> is the U.S. shareholder's pro rata share of the lesser of two amounts:
> (1) the excess of (a) the average amounts of the CFC's investments in
> U.S. property as of the end of each quarter of the taxable year over
> (b) the CFC's earnings and profits representing previous sec. 956
> inclusions; or (2) the amount of the CFC's "applicable earnings", as
> defined in sec. 956(b)(1), representing essentially the CFC's current
> and accumulated earnings and profits that have not already been
> included in its U.S. shareholders' gross incomes.

Rodriguez v. Commissioner, 137 T.C. 174, 176 n.3 (2011) (citing Boris I. Bittker

& Lawrence Lokken, Federal Taxation of Income, Estates and Gifts, para. 69.11.1,

at 69-72 through 69-74 (rev. 3d ed. 2005)), aff'd, 722 F.3d 306 (5th Cir. 2013).

U.S. property includes, among other things, stock and debt of U.S. corporations.

See sec. 956(c)(1)(B) and (C). Generally, the amount taken into account with

respect to any property that is U.S. property under section 956(a) is its adjusted

basis, reduced by any liability to which the property is subject.

When the CFC eventually distributes the amounts previously included in the

U.S. shareholder's gross income pursuant to section 951, the distribution then

reduces the CFC's E&P. See sec. 959(d). To avoid double taxation to the

shareholder, the actual distribution is excluded from the shareholder's gross income.  See sec. 959(a).

III.    Analysis

To determine whether the upper tier CFC partners are required to increase their E&P to reflect their distributive shares of EW LLC's section 951(a) inclusions, we need to analyze the interaction between sections 312 and 964. Section 312, a provision of subchapter C, is captioned "Effect on Earnings and Profits."  That section and the regulations interpreting it provide elaborate, technical rules governing the calculation of E&P.  See sec. 1.312-6, Income Tax Regs.  Section 964(a), a provision of subpart F captioned "Earnings and Profits", concerns the calculation of "the earnings and profits of any foreign corporation".

Section 964(a) provides that, "[e]xcept as provided in section 312(k)(4), * * * the earnings and profits of any foreign corporation * * * shall be determined according to rules substantially similar to those applicable to domestic corporations, under regulations prescribed by the Secretary."  The "rules * * * applicable to domestic corporations" are set forth in section 312 and the regulations interpreting it.  Section 312(k)(4), captioned "Certain Foreign Corporations", provides that special depreciation rules apply to computation of a

foreign corporation's E&P if "less than 20 percent of * * * [its] gross income * * * is derived from sources within the United States."

We must first decide the universe of regulations to which the phrase "under regulations prescribed by the Secretary", as used in section 964(a), refers. That phrase, as enacted in 1969, is naturally read to refer to any regulations that the Secretary might later promulgate under section 964(a). But given the statutory text, we believe that this phrase also refers to regulations that the Secretary had previously promulgated, or might in the future promulgate, under section 312.[3]

The phrase "under regulations prescribed by the Secretary" immediately follows the phrase "rules substantially similar to those applicable to domestic corporations". Section 964(a) provides that the same general rules apply to E&P computations for domestic and foreign corporations. Since those rules are set forth both in section 312 and in the regulations interpreting it, the reference to "regulations" in section 964(a) is reasonably read to include regulations promulgated under section 312 as well as under section 964(a). There is nothing

---

[3]The Secretary promulgated the initial regulations under sec. 312 in December 1955. <u>See</u> T.D. 6152, 1955-2 C.B. 61, 99-117.

in the text of section 964(a) that limits the scope of "regulations" to regulations that might later be promulgated under that specific provision.[4]

The Code "does not comprehensively define 'earnings and profits,'" but "[p]rovisions of the Code and regulations relating to earnings and profits ordinarily take taxable income as the point of departure." Boris I. Bittker & Lawrence Lokken, Federal Taxation of Income, Estates and Gifts, para. 92.1.3, at *4-*5 (Westlaw 2018). Among the items entering into the computation of E&P are "all items includible in gross income under section 61 or corresponding provisions of prior revenue acts." Sec. 1.312-6(b), Income Tax Regs. Thus, a corporation's E&P are calculated by making certain adjustments to its taxable income. See DiLeo v. Commissioner, 96 T.C. 858, 888 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992); Henry C. Beck Co. v. Commissioner, 52 T.C. 1, 6 (1969) (defining E&P as a measure "to approximate a corporation's power to make distributions which are more than just a return of investment" (quoting Arthur R. Albrecht, "'Dividends' and 'Earnings or Profits'", 7 Tax L. Rev. 157, 183 (1952))), aff'd per curiam, 433 F.2d 309 (5th Cir. 1970).

---

[4]Cf., e.g., sec. 964(d)(3) ("The Secretary shall prescribe such regulations as may be necessary or appropriate to carry out the purposes of this subsection." (Emphasis added.)).

Section 312 and its accompanying regulations specify how the E&P computation is affected by various corporate transactions and events. Transactions and events that may require adjustments in computing E&P include distributions of property, distributions of appreciated property, distributions of property subject to indebtedness, distributions of stock and securities, tax-free distributions, redemptions, corporate separations and reorganizations, discharge of indebtedness income, depreciation, installment sales, and last-in, first-out (LIFO) inventory adjustments.  See sec. 312.

The rules applicable to domestic corporations, as set forth in section 312 and its accompanying regulations, assume that the corporation will have determined its taxable income using U.S. tax accounting principles.  Because that assumption will often be invalid for a foreign corporation, the regulations under section 964 require that preliminary adjustments be made to the profit and loss (P&L) statement of a foreign corporation to enable the rules of section 312 to be applied correctly.

Section 1.964-1(a)(1), Income Tax Regs., provides as follows:

> [E]xcept as otherwise provided in the Code and regulations, the earnings and profits * * * of a foreign corporation for its taxable year shall be computed for all federal income tax purposes substantially as if such corporation were a domestic corporation by--

(i) Preparing a profit and loss statement with respect to such year from the books of account regularly maintained by the corporation for the purpose of accounting to its shareholders;

(ii) Making the adjustments necessary to conform such statement to the accounting principles described in paragraph (b) of this section; and

(iii) Making the further adjustments necessary to conform such statement to the tax accounting standards described in paragraph (c) of this section.

Paragraph (b) of the regulation, captioned "Accounting adjustments", states that "[t]he accounting principles to be applied in making the adjustments required by paragraph (a)(1)(ii) * * * shall be those accounting principles generally accepted in the United States for purposes of reflecting in the financial statements of a domestic corporation the operations of its foreign affiliates". Id. para. (b)(1). These principles include (for example) "clear reflection * * * of income" and rules governing "translation of foreign currency amounts into United States dollars." Id. subdivs. (i), (v). Paragraph (c) of the regulation, captioned "Tax adjustments", specifies various "tax accounting standards to be applied in making the adjustments required by paragraph (a)(1)(iii)". These include (for example) adjustments to inventories to conform to "the provisions of sections 471 and 472" and adjustments required by U.S. rules governing changes in accounting method. See id. para. (c)(1)(i) and (ii); see also id. para. (a)(2) (providing that a foreign

corporation's P&L must be adjusted to reflect the nondeductibility of "bribe[s]" and "kickback[s]" under section 162(c)).

The regulations issued under section 964, described above, do not provide comprehensive guidance for calculating the E&P of a foreign corporation. Rather, they specify a preliminary process by which a foreign corporation's P&L statement is conformed to, or made to resemble, that of a domestic corporation by making a series of tax accounting adjustments. Section 964(a) then incorporates the rules of section 312--other than the depreciation rule of section 312(k)(4)--by requiring that the foreign corporation's E&P shall be computed "according to rules substantially similar to those applicable to domestic corporations". See sec. 1.964-1(a)(1), Income Tax Regs. (providing that the E&P of a foreign corporation "shall be computed * * * substantially as if such corporation were a domestic corporation"). In other words the foreign corporation's E&P are "determined according to rules substantially similar to those applicable to domestic corporations" in that its P&L statements, as adjusted through the "regulations prescribed by the Secretary", are then further adjusted through most of the rules

under section 312 that would apply to a similarly situated domestic corporation's computation of its E&P.  See sec. 964(a); sec. 1.964-1(a)(1), Income Tax Regs.[5]

This Court and the Commissioner have consistently applied the principles of section 312 to compute a foreign corporation's E&P.  See H.H. Robertson Co. v. Commissioner, 59 T.C. 53, 70-74 (1972) (concluding section 312(a)(3) applies to determine the effect of an earlier distribution), aff'd without published opinion, 500 F.2d 1399 (3d Cir. 1974); Juha v. Commissioner, T.C. Memo. 2012-68, slip op. at 12-15 (discussing the application of section 312 and its regulations in determining a foreign corporation's E&P).  In Rev. Rul. 86-131, 1986-2 C.B. 135, the Commissioner analyzed the effect of a distribution of property on the E&P of a foreign corporation.  For a domestic corporation, section 312(a) sets forth the general rule governing that subject.  The Commissioner concluded that "[t]he rules of section 312(a) apply to distributions by a foreign corporation as well as a domestic corporation."  Rev. Rul. 86-131, 1986-2 C.B. at 136 (citing H.H. Robertson Co. v. Commissioner, 59 T.C. at 70-75).[6]

_____

[5]The Secretary issued Notice 2009-7, 2009-3 I.R.B. 312, and Notice 2010-41, 2010-22 I.R.B. 715, which address transactions similar to the transaction at issue.  However, neither notice addresses the calculation of the E&P of a foreign corporation.

[6]We are not bound by revenue rulings, and the weight we afford them

(continued...)

For these reasons and looking at the plain meaning of the relevant provisions, we conclude that the rules set forth in section 312 and its regulations must be applied in determining the E&P of the upper tier CFC partners of EW LLC. See Huntsberry v. Commissioner, 83 T.C. 742, 747-748 (1984). The next step is to determine what should be included in their E&P. There is no explicit rule in section 312, section 964, or their accompanying regulations specifying how a CFC's distributive share of partnership income generally--or its distributive share of a partnership's income inclusion under section 951(a) specifically--should be treated for purposes of computing its E&P. We accordingly consult the general rules set forth in subpart F and section 312.

Subpart F requires that the upper tier CFC partners compute their gross income as if they were domestic corporations. See sec. 1.952-2(a)(1), (c)(1), Income Tax Regs. The upper tier CFC partners are partners of a domestic partnership. Section 701 provides that a partnership is not liable for Federal income tax; instead, its partners are liable in their individual capacities for the income tax arising from the partnership's operations. In determining its income

---

[6](...continued)
depends upon their persuasiveness and the consistency of the Commissioner's position over time. See Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944); PSB Holdings, Inc. v. Commissioner, 129 T.C. 131, 142 (2007).

tax, a partner must take into account its "distributive share" of each item of partnership income, gain, loss, deduction, and credit. Sec. 702. Each partner is taxed on its distributive share of partnership income without regard to whether the income is actually distributed. Sec. 1.702-1(a), Income Tax Regs.

Under these rules the upper tier CFC partners must include in their gross income their distributive shares of EW LLC's income. Under section 951(a) EW LLC's income includes subpart F income and section 956(a) inclusions from the lower tier CFCs, regardless of whether the lower tier CFCs made actual distributions. The gross income of the upper tier CFC partners thus includes their distributive share of EW LLC's gross income, whether or not distributed, pursuant to sections 61(a)(13) and 702(c). The fact that the upper tier partners are CFCs makes no difference. For the purposes of computing gross and taxable income under subpart F, a foreign corporation is treated as a domestic corporation and the principles of sections 61 and 63 apply. Sec. 1.952-2(a) and (b), Income Tax Regs.

Since there are no Code provisions or regulations that have special rules for E&P with respect to distributive shares of partnership income pursuant to section 951(a), the general rules of section 312 apply. Section 1.312-6(b), Income Tax Regs., explicitly states that E&P shall be determined by taking into account "all items includible in gross income under section 61". Because the upper tier CFC

partners' distributive shares of EW LLC's section 951(a) inclusions are "includible in [their] gross income", their E&P must be increased by those amounts.

Therefore, each upper tier CFC partner is required to include in gross income, and make a correlative increase to its E&P to reflect, its distributive share of EW LLC's partnership income, including EW LLC's section 951(a) inclusions with respect to the lower tier CFCs. If the upper tier CFC partners did not increase their E&P on this account, there is no other mechanism to ensure that their E&P would ever be increased. That would produce an irrational result because (as noted supra pp. 5-6) the lower tier CFCs treated the amounts included by EW LLC as "previously taxed E&P" under section 959(c).

The fact that the upper tier CFC partners did not reflect their distributive shares of EW LLC's section 951(a) inclusions on their unconsolidated financial statements has no bearing on the requirement that such amounts be included in their E&P. The P&L statement to which the regulations refer is not produced by copying local financial records but by preparing from such records a financial statement conforming to U.S. tax standards. See sec. 1.964-1(a)(1), Income Tax Regs. The required preparation includes ensuring that the P&L statement conforms to U.S. Federal income tax principles applicable to the computation of

E&P by including all items of income under U.S. tax principles. Petitioner cannot follow local accounting or GAAP to the exclusion of U.S. tax principles. E&P are increased upon a corporate partner's inclusion in income of a distributive share of partnership income, even if the partner does not receive a distribution of cash from the partnership. See Henry C. Beck Co. v. Commissioner, 52 T.C. at 5-6, 10 (concluding that a corporation's E&P are increased even if the profit that resulted in that increase is not taxable); sec. 1.312-6, Income Tax Regs.; Rev. Rul. 79-20, 1979-1 C.B. 137.

IV.    Petitioner's Arguments

Petitioner's primary argument, reduced to its essentials, is that the section 964 regulations supply a freestanding, self-contained, and comprehensive system for determining the E&P of a foreign corporation, without any need to refer to or incorporate the rules set forth in section 312 and the regulations thereunder. As discussed earlier section 1.964-1(a)(1), Income Tax Regs., states that a foreign corporation's E&P shall be computed "substantially as if such corporation were a domestic corporation by" doing three things:  taking the foreign corporation's P&L statement and making U.S. accounting and tax adjustments to it. Petitioner interprets the preposition "by" in an extremely narrow sense, to mean "by doing these three things and nothing else."

Petitioner contends that the upper tier CFC partners did the three required things by making the adjustments specified in paragraphs (b) and (c) of the regulation. That having been done, petitioner says, the E&P computation was complete. Petitioner's view of section 1.964-1(a), Income Tax Regs., forecloses resort to the general rules of section 312 for determining the E&P of a foreign corporation--in particular, to the requirement that E&P shall be determined by taking into account "all items includible in gross income under section 61". Sec. 1.312-6(b), Income Tax Regs.

Petitioner's argument is unpersuasive. The section 964 regulations set forth preliminary steps that must be taken to conform a foreign corporation's P&L statement to that of a domestic corporation. By its terms, section 1.964-1(a)(1), Income Tax Regs., refers only to the "profit and loss statement" and "the adjustments necessary to conform such statement" to U.S. accounting and tax principles. The section 964 regulations do not tell the taxpayer how to compute E&P. They simply require that the foreign corporation's P&L statement first be adjusted to U.S. standards before the E&P rules of section 312 can be applied.

Section 964(a) explicitly incorporates the rules of section 312. It provides that the E&P of a foreign corporation shall be determined according to rules substantially similar to those applicable to domestic corporations "[e]xcept as

provided in section 312(k)(4)." If section 964 did not incorporate the general rules of section 312, Congress would have had no reason to carve out an exception for the specific depreciation rules of section 312(k)(4).

Section 1.964-1(a)(1), Income Tax Regs., reiterates the incorporation of section 312 by stating that, "except as otherwise provided in the Code and regulations, the earnings and profits * * * of a foreign corporation for its taxable year shall be computed for all federal income tax purposes substantially as if such corporation were a domestic corporation". The phrase "except as otherwise provided in the Code and regulations" clarifies that all of the E&P rules applicable to domestic corporations also apply to a foreign corporation, unless there is a provision explicitly prohibiting application. For example, section 312(m) provides a special rule for taking into account interest paid on a bearer bond for foreign corporations other than CFCs. If section 312 did not apply to foreign corporations, there would be no need for section 312(m).

Without reference to the detailed rules of section 312 and the regulations interpreting it, it would be without meaning--employing the section 964 regulations alone--to perform an E&P computation for a foreign corporation. As noted earlier section 312 and the regulations thereunder explain how numerous corporate transactions and events affect E&P. These include distributions of

property, distributions of appreciated property, distributions of property subject to indebtedness, distributions of stock and securities, tax-free distributions, redemptions, corporate separations and reorganizations, discharge of indebtedness income, depreciation, installment sales, and LIFO inventory adjustments. See sec. 312. The section 964 regulations do not address or even mention any of these things. This makes it clear that the E&P of a foreign corporation must be determined by applying the general rules of section 312 that govern E&P computations for a domestic corporation.

Finally, petitioner contends that section 951(a) inclusions do not increase the dividend paying capacity of the upper tier CFC partners. Petitioner refers to a section 951(a) inclusion as "phantom income" and not a transfer of value. It argues that E&P increase only where a corporation receives tangible, economic value that enhances its dividend paying capacity.

There are many instances in which E&P are increased when amounts are included in income but no cash is received. For example, taxpayers that are subject to the rules governing original issue discount (OID) on a debt instrument are generally required to include the OID in gross income, and thus E&P, even though no cash is received until a later period. See sec. 1272(a)(1); sec. 1.312-6(b), Income Tax Regs. Another instance in which this occurs is with an accrual

method taxpayer. Similarly, an accrual method taxpayer may include income before the receipt of cash. An accrual method taxpayer's E&P increase when the taxpayer accrues income, not in a later period when cash is received. See sec. 1.312-6, Income Tax Regs.

Section 882(b) is irrelevant in determining the gross income, and hence the E&P, of the upper tier CFC partners. Section 882 provides for direct U.S. taxation of a foreign corporation's U.S.-source income and income effectively connected with a U.S. trade or business. Secs. 881 and 882. The section 951(a) income inclusions at issue here are not U.S. source income or income effectively connected with a U.S. trade or business. Accordingly, sections 881 and 882(b) are inapplicable in this case. The gross income of the upper tier CFC partners is calculated pursuant to section 61. Their distributive shares of EW LLC's income are thus included in their gross income and (correspondingly) in their E&P.

V.  Conclusion

Eaton's upper tier CFC partners must include their distributive shares of EW LLC's income, including their distributive shares of EW LLC's section 951(a) income inclusions, in their gross income and their E&P. CFCs compute E&P in the same manner as a domestic corporation, except as otherwise provided in the Code or the regulations. See sec. 964(a). There are no special E&P rules in the

Code or regulations concerning a CFC partner's distributive share of partnership income. Domestic corporations increase E&P by amounts included in gross income under section 61, and a partner's gross income includes its distributive share of all items of the partnership's income. See secs. 61(a)(13), 702(c); see also sec. 1.312-6(b), Income Tax Regs. Eaton is thus required to include in its consolidated income, under sections 951 and 956, $73,030,810 and $114,065,635 for tax years 2007 and 2008, respectively.

Accordingly, we will grant respondent's motion for partial summary judgment and deny petitioner's cross-motion for partial summary judgment. We have considered all of the arguments made by the parties, and to the extent we did not mention them above, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

An appropriate order will be issued.

Reviewed by the Court.

THORNTON, MARVEL, PARIS, BUCH, LAUBER, NEGA, ASHFORD, URDA, and COPELAND, JJ., agree with this opinion of the Court.

PUGH, J., did not participate in the consideration of this opinion.

MORRISON, <u>J</u>., concurring: In my view, the opinion of the Court is unsatisfactory to the extent it suggests that one of the rules in section 1.312-6(b), Income Tax Regs. (the rule that E&P shall be determined by taking into account "all items includible in gross income under section 61"), governs the computation of the E&P of a foreign corporation solely by operation of section 964(a) without the intervening operation of section 1.964-1(a)(1), Income Tax Regs. It is section 1.964-1(a)(1), Income Tax Regs., by requiring the E&P of a foreign corporation to be computed "substantially as if such corporation were a domestic corporation", that incorporates that particular rule for the purpose of computing the E&P of a foreign corporation.

FOLEY, C.J., dissenting:  Eschewing a plain language interpretation, the opinion of the Court imprudently stretches the explicit terms of section 964(a) and its accompanying regulation.  Section 964(a) provides:

> Except as provided in section 312(k)(4), for purposes of this subpart, the earnings and profits of any foreign corporation, and the deficit in earnings and profits of any foreign corporation, for any taxable year shall be determined according to rules substantially similar to those applicable to domestic corporations, under regulations prescribed by the Secretary.  * * *

Thus, the Secretary has wide latitude to prescribe these earnings and profits (E&P) calculations but, pursuant to section 312(k)(4), cannot require a foreign corporation that earns less than 20% of its gross income from U.S. sources to use straight line depreciation.  Yet the opinion of the Court concludes that "[s]ection 964(a) * * * incorporates the rules of section 312--other than the depreciation rule of section 312(k)(4)".  See op. Ct. p. 16.  To the contrary, section 964(a) explicitly incorporates section 312(k)(4) but makes no other reference to section 312.

Undaunted by the plain language, the opinion of the Court continues, misquotes the statute, and proceeds to interpret language that Congress did not write:

> Section 964(a) provides that the same general rules apply to E&P computations for domestic and foreign corporations.  Since those rules are set forth both in section 312 and in the regulations interpreting it, the reference to "regulations" in section 964(a) is

> reasonably read to include regulations promulgated under section 312 as well as under section 964(a). There is nothing in the text of section 964(a) that limits the scope of "regulations" to regulations that might later be promulgated under that specific provision. [Fn. ref. omitted.]

See op. Ct. p. 12-13 (emphasis added). Section 964(a) does not, however, provide that the "same general rules apply" to E&P computations for domestic and foreign corporations. The statute provides that the E&P of a foreign corporation "shall be determined according to rules <u>substantially similar to those applicable to domestic corporations</u>, under regulations prescribed by the Secretary." See sec. 964(a) (emphasis added). Without citing any precedent, the opinion of the Court goes on to state that the phrase "under regulations prescribed by the Secretary" also refers "to regulations that the Secretary <u>had previously promulgated</u>, or might in the future promulgate, <u>under section 312</u>." See op. Ct. p. 12 (emphasis added). This analysis sets bad precedent and is a rickety analytical construct.

Section 964(a) delegates broad regulatory authority to the Secretary, and he exercised that authority by promulgating section 1.964-1(a)(1), Income Tax Regs., which states: "[E]xcept as otherwise provided in the Code and regulations, the earnings and profits * * * of a foreign corporation for its taxable year shall be computed for all federal income tax purposes substantially as if such corporation were a domestic corporation by" following a specific three-step process. The

opinion of the Court states that "[p]etitioner interprets the preposition 'by' in an extremely narrow sense, to mean 'by doing these three things and nothing else.'" See op. Ct. p. 21. Yet that is precisely what the regulation dictates. Indeed, the prior version of section 1.964-1, Income Tax Regs., provided that a foreign corporation's E&P shall be computed according to a five-step process. See T.D. 6764, 1964-3 C.B. 260, 260-261. The regulation's first three steps were identical to the three steps in the current regulation. The last two steps, made obsolete by the enactment of section 985, provided rules for converting a foreign corporation's E&P calculation to U.S. dollars. The first three steps of the prior regulation were not preliminary or subject to additional revision under section 312. The calculation was complete upon the conversion to U.S. dollars and, like the current version of section 1.964-1(a), Income Tax Regs., section 312 played no part in that calculation. See T.D. 6764, 1964-3 C.B. 260. Similarly, the E&P calculation process in the current regulation is self-contained and complete. The Secretary certainly had, and still has, the authority to promulgate regulations incorporating the rules of, or similar to, section 312. He has not.[1]

[1]In 2009 the Secretary identified transactions similar to the transaction at issue as a "Transaction of Interest" that had the "potential for tax avoidance." See Notice 2009-7, 2009-3 I.R.B. 312. In 2010 the Secretary stated he would promulgate regulations to address these purported "tax avoidance" transactions.

(continued...)

We need not opine on whether the Secretary's inaction is the result of bureaucratic indolence or inertia, but we know this: The Secretary has not promulgated the rule respondent espouses and is now imploring us to do his bidding. The opinion of the Court acquiesces. We should decline. Our role is to review and construe, not adjust and reconstruct, the statute and the regulations. See Dodd v. United States, 545 U.S. 353, 359 (2005) (stating that courts "are not free to rewrite the statute that Congress has enacted"). The Secretary is bound by the terms of the rules he created. Similarly, taxpayers are bound by the applicable rules, but they are not required to employ their imagination to divine them. Petitioner may have found a hole in the dike, but the closing of the hole "calls for the application of the * * * [Secretary's] thumb, not the court's." Fabreeka Prods. Co. v. Commissioner, 294 F.2d 876, 879 (1st Cir. 1961), vacating and remanding 34 T.C. 290 (1960), Friedman v. Commissioner, 34 T.C. 456 (1960), and Sherman v. Commissioner, 34 T.C. 303 (1960). In short, we must interpret, not make, the law.

GUSTAFSON, J., agrees with this dissent.

---

[1](...continued)
See Notice 2010-41, 2010-22 I.R.B. 715. He has not. Curiously, respondent now asks the Court, rather than his Office of Tax Policy scriveners, to interpret sec. 1.964-1, Income Tax Regs., to halt a transaction similar to those he has for a decade deemed problematic.